[No. B057751. Second Dist., Div. Five. Feb. 24, 1993.]

MYERS BUILDING INDUSTRIES, LIMITED, Cross-complainant and Respondent, v.
INTERFACE TECHNOLOGY, INC., Cross-defendant and Appellant.

COUNSEL

Cotkin, Collins & Franscell, Cotkin & Collins James P. Collins, Jr., and Jeffrey L. Garland for Cross-defendant and Appellant.

John F. Watkins and Marian H. Tully for Cross-complainant and Respondent.

OPINION

**GRIGNON, J.**—Appellant Interface Technology, Inc. appeals from a judgment after a jury trial by which respondent Myers Building Industries, Limited was awarded $1.1 million in punitive damages and $350,000 in attorney fees on Myers's cross-complaint against Interface. Those awards were made in connection with a special jury verdict which found that Interface had breached its contract with Myers, causing Myers $279,126 in net compensatory damages. The jury also found, by special verdict, that there had been "oppression, fraud or malice in the conduct of Interface toward Myers." Interface contends the punitive damage award is excessive

as a matter of law and the result of judicial misconduct, and the attorney fee award is not authorized by statute or contract. We conclude the punitive damage award must be stricken because it is not based on a tort verdict. We conclude further the attorney fee award must be stricken because it is not authorized by contract or the provisions of Civil Code section 1717. We modify the judgment by striking the awards of punitive damages and attorney fees. As modified, we affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

The instant action is a multiparty lawsuit concerning the construction of an office building commissioned by Interface. On May 14, 1984, Interface entered into a written contract with Myers by which Myers, as general contractor, agreed to construct a 75,000-square-foot office building at a contract price of $3,628,050. Myers then entered into various contracts with subcontractors. Following the completion of the office building, certain of Myers's subcontractors filed mechanics' liens against the property and subsequently brought lawsuits against Interface to foreclose those liens and against Myers for failure to pay amounts due under the various subcontracts.

Interface filed a 28-count cross-complaint against Myers (and certain of the subcontractors) for breach of contract, negligence, breach of fiduciary duty, implied indemnity, breach of warranty, and common counts. Essentially, Interface alleged that Myers had failed to properly supervise or compensate the subcontractors pursuant to the written contract with Interface, and had caused Interface to be sued by certain of those subcontractors. Interface sought its attorney fees in connection with each of the causes of action against Myers.

Myers filed a cross-complaint against Interface and others for breach of the construction contract, quantum meruit, account stated, tortious breach of the implied covenant of good faith and fair dealing, negligence, fraud, negligent misrepresentation, equitable indemnity, and declaratory relief. Additional causes of action were stated against various subcontractors and individuals.

The instant dispute concerned numerous plan changes which had been encountered in the course of the construction of the office building, and whether Interface had agreed to compensate Myers for the additional costs arising from those plan changes. Apparently, Myers was paid over $4 million on the contract. Myers alleged Interface had promised, in requesting those plan changes, to pay Myers's additional costs plus a fixed fee, and that the contract price had been revised to $4,421,653.35. Among the agreed

changes asserted by Myers were: increase of the size of the building to 87,000 square feet, removal of 90,000 to 100,000 yards of dirt, and installation of trash enclosures, handrails, fire doors, and a false wall. Myers claimed damages of $763,597.43.[1] In addition, Myers alleged it was induced to execute releases of mechanics' liens in favor of Interface in exchange for Interface's oral promise to pay the amounts demanded by Myers and its subcontractors. Myers sought its attorney fees in connection with its prosecution of the cross-complaint pursuant to the terms of the construction agreement.

The matter proceeded to the first phase of the trial on liability and compensatory damages. The jury returned a special verdict in favor of Myers on its cross-complaint against Interface, finding that Interface had breached its contract with Myers and awarding Myers $279,126[2] in net compensatory damages. In addition, the jury found that Interface had acted with "oppression, fraud or malice" towards Myers. A trial on punitive damages followed. The jury returned a punitive damage verdict of $1.1 million.

Interface moved for a new trial on punitive damages and for judgment notwithstanding the punitive damage verdict on the ground that the punitive damage verdict was not authorized by law, and, in the alternative, moved to reduce the punitive damage verdict as excessive. The motions were denied.

Myers submitted a memorandum of costs by which it sought $372,242 in attorney fees. Interface moved to tax costs, contending that no statutory or contractual basis existed for an award of attorney fees. The trial court ordered Interface to pay Myers $350,000 in attorney fees. Interface timely appealed from the judgment, the order awarding attorney fees, and the order denying its motions for new trial and judgment notwithstanding the verdict. No cross-appeal was filed by Myers.

## DISCUSSION

### I. *Punitive Damages*

Interface contends the punitive damage verdict was the result of judicial misconduct and is excessive as a matter of law. ▮▮▮▮ We need not reach these issues, however, because we conclude the special

---

[1]Interface alleged that the entire agreement was subject to a maximum agreed cost set forth in the written contract.

[2]The jury actually awarded gross damages on the contract claims in the amount of $683,983, but credited Interface with $404,857 previously paid to subcontractors by Interface on Myers's behalf.

verdict rendered by the jury cannot support any punitive damage award in light of the absence of a tort finding.[3]

The relevant special verdict forms presented to the jury following the first phase of trial read as follows:

"We, the jury in the above entitled case, find the following special verdict on the questions submitted to us:

"MYERS BUILDING INDUSTRIES (MBIL) CLAIMS
AGAINST INTERFACE TECHNOLOGY (IFT)

"No. 1. Do you find that INTERFACE breached its contract with [MYERS]?

 "Yes___X___

 "No_____

"No. 2. What amount of damages do you award against INTERFACE in favor of [MYERS]?

"$683,983.00.

"No. 3. Does the amount of damages set forth in #2 above contain any offsets for damages arising from the storm drain?

 "Yes_____

 "No___X___

"No. 4. If so, what amount? $_____ .

"No. 5. Does the amount awarded [MYERS] include any amounts paid by [INTERFACE] on account of the following [subcontractors]? If so, please set forth the amount opposite the name?

---

[3]This issue was raised by this court on our own motion. Both parties were given an opportunity to present additional briefing on this issue. This court has discretion to consider controlling questions of law on appeal especially where all due process considerations have been satisfied. (See, e.g., *Canaan* v. *Abdelnour* (1985) 40 Cal.3d 703, 722, fn. 17 [221 Cal.Rptr. 468, 710 P.2d 268, 69 A.L.R.4th 915]; *Cabrera* v. *Plager* (1987) 195 Cal.App.3d 606, 611 [241 Cal.Rptr. 731].) "We are at liberty to consider, and even to decide, a case upon any points that its proper disposition may seem to require, whether taken by counsel or not." (*Noguera* v. *North Monterey County Unified Sch. Dist.* (1980) 106 Cal.App.3d 64, 72, fn. 5 [164 Cal.Rptr. 808].)

| | |
|---|---|
| "Heuler Tile | $ 89,286.00 |
| "Brandon Plumbing | $ 26,405.00 |
| "Terre Corp. | $ 23,630.00 |
| "Blue Diamond | $ 2,500.00 |
| "Koltavary | $ 792.00 |
| "Hillcrest | $ 42,244.00 |
| "QES | $ 90,000.00 |
| "Comaianni & Woller | $ 130,000.00 |

"No. 6. Do you find that there was any oppression, fraud, or malice in the conduct of INTERFACE towards [MYERS]?

"Yes X

"No_____"

No special verdict findings were submitted to the jury on any cause of action except breach of contract, even though Myers had pleaded a cause of action against Interface for fraud. The special verdict read, on its face, as a net award of compensatory damages for breach of contract with a special finding that Interface had acted with "oppression, fraud, or malice" towards Myers. The damages set forth in the special verdict appear to be the sums which Myers claimed it was owed under the contract. The overall amount was offset by amounts already paid by Interface to Myers's unpaid subcontractors.

After the special verdict on the first phase of the trial and prior to the trial on punitive damages,[4] Interface requested that the trial court read to the jury a modified version of BAJI No. 14.72.2.[5] BAJI No. 14.72.2 refers to damage suffered "as a result of the fraud." Interface requested that the instruction be modified to read, "as a result of the fraud, *if any*." The trial court refused this

---

[4]The same jury heard both phases of the trial.

[5]BAJI No. 14.72.2 reads:

"You must now determine whether you should award punitive damages against [Interface] for the sake of example and by way of punishment. Whether punitive damages should be imposed, and if so, the amount thereof, is left to your sound discretion, exercised without

modification, finding that there had already been a finding of fraud by the jury. The trial court was referring to the fact that the jury had been instructed with BAJI No. 14.72.1 during the first phase of the trial. BAJI No. 14.72.1 provides: "If you find that any party suffered actual injury, harm or damage as a proximate result of [fraud or breach of fiduciary duty], you must decide, in addition, whether by clear and convincing evidence you find that there was oppression, malice or fraud in the conduct on which you base your finding of liability. . . ."

In view of the confusion inherent in the first phase special verdict, Interface also requested the trial court to instruct the jury that if it had awarded compensatory damages for breach of contract only, then no punitive damages could be awarded.[6] Although this instruction might have avoided the problem presented by this appeal, it was also refused.[7]

"[A] special verdict is that by which the jury finds the facts only, leaving the judgment to the court. The special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the court but to draw from them conclusions of law." (Code Civ. Proc., § 624.)

█ "Unlike a general verdict (which merely *implies* findings on all issues in favor of the plaintiff or defendant), a special verdict presents to the jury each ultimate fact in the case. The jury must resolve all of the ultimate

---

passion or prejudice. [¶] If you determine that punitive damages should be assessed against a defendant, in arriving at the amount of such an award, you must consider:

"(1) The degree of reprehensibility of the conduct of the defendant.

"(2) The amount of punitive damages which will have a deterrent effect on the defendant in the light of defendant's financial condition.

"(3) The punitive damages must bear a reasonable relation to the injury, harm, or damage actually suffered by the plaintiff, as a result of the fraud."

[6]That proposed instruction read, "If the actual damages you previously awarded to [Myers] against Interface were awarded for breach of contract only, then you must return a verdict for no punitive damages at all. This is because, punitive damages are not recoverable in an action for breach of contract, no matter how wilful, malicious or fraudulent the breach."

[7]Thus, we reject Myers's argument that Interface failed to raise in the trial court the propriety of the punitive damage award given the absence of a tort verdict. (Compare *Acadia, California, Ltd.* v. *Herbert* (1960) 54 Cal.2d 328, 337 [5 Cal.Rptr. 686, 353 P.2d 294] [where "the jury was properly instructed that it could not award damages under both contract and tort theories, but must select which theory, if either, was substantiated by the evidence, and that punitive damages could be assessed if defendant committed a tort with malice or intent to oppress plaintiffs, but that such damages could not be allowed in an action based on breach of contract, even though the breach was wilful"].)

facts presented to it in the special verdict, so that 'nothing shall remain to the court but to draw from them conclusions of law.' (Code Civ. Proc., § 624.) [¶] The requirement that the jury must resolve every controverted issue is one of the recognized pitfalls of special verdicts. '[T]he possibility of a defective or incomplete special verdict, or possibly no verdict at all, is much greater than with a general verdict that is tested by special findings . . . .' [Citation.]" (*Falls* v. *Superior Court* (1987) 194 Cal.App.3d 851, 854-855 [239 Cal.Rptr. 862], italics in original.)

"In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to actual damages, may recover damages for the sake of example and by way of punishing the defendant." (Civ. Code, § 3294, subd. (a).) ■ An award of punitive damages is not supported by a verdict based on breach of contract, even where the defendant's conduct in breaching the contract was wilful, fraudulent, or malicious. (*Miller* v. *National American Life Ins. Co.* (1976) 54 Cal.App.3d 331, 336 [126 Cal.Rptr. 731]; *Crogan* v. *Metz* (1956) 47 Cal.2d 398, 405 [303 P.2d 1029]; see *Consol. Data Term.* v. *Applied Digital Data Systems* (9th Cir. 1983) 708 F.2d 385; *All-West Design, Inc.* v. *Boozer* (1986) 183 Cal.App.3d 1212, 1224-1225 [228 Cal.Rptr. 736]; cf. *Horn* v. *Guaranty Chevrolet Motors* (1969) 270 Cal.App.2d 477, 484 [75 Cal.Rptr. 871].) Even in those cases in which a separate tort action is alleged, if there is "but one verdict based upon contract" a punitive damage award is improper. (*All-West Design, Inc.* v. *Boozer, supra,* at p. 1225.) Where such an award is made, the reviewing court may modify the judgment to strike the punitive damages and affirm the judgment as so modified. (*Crogan* v. *Metz, supra,* at p. 405.)[8]

■ It is clear in this case that the jury was neither requested to nor did it make the necessary factual findings for a fraud or other tort cause of action. Accordingly, an award of punitive damages may not be sustained.

---

[8]Myers has not requested that we remand the matter for a new trial. Nor would such a course of action be appropriate. Under the doctrine of invited error, the jury's failure to arrive at a verdict on a fraud cause of action was accomplished at Myers's behest. (See *Jentick* v. *Pacific Gas & Elec. Co.* (1941) 18 Cal.2d 117, 121 [114 P.2d 343] [invited error relating to jury instructions].) It is incumbent upon counsel to propose a special verdict that does not mislead a jury into bringing in an improper special verdict. (*Id.* at p. 122.) Myers's failure to propose an appropriate special verdict was responsible for the erroneous special verdict, and its good faith in this respect is immaterial. (*Ibid.*) Moreover, not only did Myers fail to propose an appropriate special verdict, it also vigorously opposed Interface's attempts to clarify the erroneous special verdict which conduct can be construed as a waiver of error. (See *Brown* v. *Regan* (1938) 10 Cal.2d 519, 523 [75 P.2d 1063].) Accordingly, Myers is bound by the erroneous special verdict.

Nevertheless, Myers contends that the jury was properly instructed concerning the elements of a fraud cause of action and that there is substantial evidence to support a finding of fraud. Such a finding of fraud, however, was never expressly or impliedly made by the jury in its special verdict which found only that Interface had breached its contract with Myers.[9] A jury instruction alone does not constitute a finding. Nor does the fact that the evidence might support such a finding constitute a finding.[10] The jury was, in fact, instructed as to a fraud cause of action. Substantial evidence of fraud and damage may appear in the record. However, without an actual verdict by the jury on a fraud (or other tort) cause of action, the instructions and evidence cannot support the punitive damage award.

Myers contends further that the jury's finding of malice, fraud, or oppression constitutes an implied finding that Interface committed fraud against Myers. We disagree. The statutory scheme for allowance of punitive damages requires *both* a tort action *and* a finding of "oppression, fraud, or malice." (Civ. Code, § 3294.) Additionally, we note that the special verdict on "oppression, fraud, or malice" was presented in the disjunctive, and the jury could have found only oppression or malice. Thus, the finding does not constitute a factual finding on a fraud cause of action. (See *Miller* v. *National American Life Ins. Co., supra*, 54 Cal.App.3d at p. 337, fn. 3.)

We also reject Myers's contention that it was Interface's responsibility to obtain special verdict findings on the fraud cause of action and that Interface has waived its right to assert the deficiency in the verdict form by failing to object. (*Mixon* v. *Riverview Hospital* (1967) 254 Cal.App.2d 364, 376-378 [62 Cal.Rptr. 379]; *All-West Design, Inc.* v. *Boozer, supra*, 183 Cal.App.3d at p. 1220.) Myers is attempting to enforce the judgment based on the special verdict and must bear the responsibility for a special verdict submitted to the

---

[9]Compare *All-West Design, Inc.* v. *Boozer, supra*, 183 Cal.App.3d at pages 1220-1223 (where, although special verdict forms were confusing and compound, jury specifically found two kinds of fraud, as well as oppression, fraud or malice, and the appellate court could "track back through the special findings in order to appreciate exactly what the jury did"). Here, no tort verdict issued from the jury.

[10]We note also that Myers's theory of fraud at trial was not the same theory pleaded in its complaint. The complaint set forth a claim for promissory fraud when, on August 30, 1985, Interface stated that it would pay all sums due under the contract. (See, e.g., *Walker* v. *Signal Companies, Inc.* (1978) 84 Cal.App.3d 982 [149 Cal.Rptr. 119].) Not only was this theory not advanced at trial, the uncontroverted evidence was that Myers received nearly $4 million on the contract prior to suit. The fraud theory advanced at trial centered on Interface's postbreach conduct in promising to pay certain sums due for extra work if mechanic's lien releases would be given or obtained by Myers. This conduct could be characterized as a breach of the basic contract or its modified terms. It could also, theoretically, be characterized as an intentional misrepresentation (fraud) if actual damage independent of the contract damages could be shown.

jury on its own case. (*Jentick* v. *Pacific Gas & Elec. Co.*, *supra*, 18 Cal.2d at p. 121.) The special verdict in this case failed entirely to elicit findings concerning a fraud cause of action. In addition, we note that Interface attempted repeatedly to bring this problem to the attention of Myers's trial counsel and the trial court, through its motions prior to the punitive damage phase of the trial, and following the trial, through motions for judgment notwithstanding the verdict and for new trial.[11] Thus, the absence of a tort special verdict finding could have been remedied prior to the discharge of the jury. However, Myers's trial counsel vigorously opposed Interface's motions and maintained that this was unnecessary, since the finding of "oppression, fraud or malice" sufficed. (*Brown* v. *Regan*, *supra*, 10 Cal.2d at pp. 523-524.) It did not.

Because no special verdict finding on a tort cause of action supports the jury's $1.1 million punitive damage verdict and punitive damages may not be awarded in connection with a breach of contract no matter how gross or wilful, we must necessarily strike the punitive damage portion of the judgment.

## II. *Attorney Fee Award*

Interface contends that the trial court erred in awarding $350,000 in attorney fees to Myers. Interface does not assert that the amounts incurred by Myers for attorney fees were unreasonable but, rather, the attorney fee award is not supported by any agreement between the parties.[12] We conclude the contractual provisions at issue constitute provisions for indemnity against third party claims and not attorney fee provisions within the meaning of Civil Code section 1717. We hold, therefore, that contractual third party

---

[11] Interface also attempted to remedy this by submitting a special verdict form at the punitive damages phase of the trial which would have clarified whether any fraud damages were awarded.

[12] Myers also argues that Interface is estopped by its request for attorney fees in its cross-complaint against Myers to deny Myers's right to attorney fees under the contract. While it is true that Interface requested attorney fees under the contract in its cross-complaint against Myers, mere allegation of a contractual right to attorney fees is not sufficient to create an estoppel where Interface would not *actually* have been entitled to attorney fees under the contract if Interface had prevailed. (*Alhambra Redevelopment Agency* v. *Transamerica Financial Services* (1989) 212 Cal.App.3d 1370, 1380-1382 [261 Cal.Rptr. 248]; *Leach* v. *Home Savings & Loan Assn.* (1986) 185 Cal.App.3d 1295, 1304-1307 [230 Cal.Rptr. 553].) Compare the estoppel theory advanced in *Manier* v. *Anaheim Business Center Co.* (1984) 161 Cal.App.3d 503, 508 [207 Cal.Rptr. 508] and *Jones* v. *Drain* (1983) 149 Cal.App.3d 484, 489-490 [196 Cal.Rptr. 827]. Those cases were based upon the earlier decision of *Pas* v. *Hill* (1978) 87 Cal.App.3d 521 [151 Cal.Rptr. 98], which was overruled in *Saucedo* v. *Mercury Sav. & Loan Assn.* (1980) 111 Cal.App.3d 309 [168 Cal.Rptr. 552]. *Manier* and *Jones* were later disapproved in *Leach* v. *Home Savings & Loan Assn.*, *supra*, at pages 1306-1307.

claims indemnity clauses are not made reciprocal under Civil Code section 1717, because they do not provide for an award of attorney fees incurred in actions to enforce the contract.

### A. *The Contractual Provisions*

Myers asserts that the agreement between it and Interface consists of several written documents, some of which contain unilateral attorney fee provisions made reciprocal by Civil Code section 1717. We will begin by describing the various documents and setting forth those provisions which arguably may be considered attorney fee provisions.

#### 1. *The Construction Contract*

The first written document is entitled, "The American Institute of Architects, AIA Document A111, Standard Form of Agreement Between Owner and Contractor, where the basis of payment is the Cost of the Work Plus a Fee (1978 Edition)," executed by Interface and Myers on May 14, 1984 (the Construction Contract). This is the basic Construction Contract between the parties, and describes the project as a 75,000-square-foot building with a total contract price of $3,628,050. The standard American Institute of Architects (AIA) form has been interlineated and additional terms and conditions have been attached. The Construction Contract makes no mention of attorney fees in the event of a dispute between the parties or in any other context.

#### 2. *The General Conditions*

The second written document is entitled, "The American Institute of Architects AIA Document A201, General Conditions of the Contract for Construction, (1976 Edition)" (the General Conditions). This document is unexecuted, undated, and consists of standard boilerplate language with no addenda or modifications.

The General Conditions makes three express references to attorney fees. The first of these is found at AIA Document A201, section 4.18.1, which provides as follows:

"INDEMNIFICATION

"4.18.1 To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner and the Architect and their agents and employees from and against all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from

the performance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom and (2) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder. . . ."

AIA Document A201 also provides in section 6.2.5 that if the contractor wrongfully causes damage to the work or property of another contractor, and the owner is sued or forced to arbitrate, then the contractor shall pay to the owner all attorney fees and costs.[13]

Finally, AIA Document A201 provides in section 9.9.2 that in the event the owner is required to pay sums to subcontractors in order to obtain releases of liens, the contractor must refund to the owner all moneys "that the latter may be compelled to pay in discharging such lien, including all costs and reasonable attorney's fees."[14] However, the parties concede this provision was modified by the Supplementary Conditions (see discussion, *post*) and is inapplicable.

---

[13]Section 6.2.5 provides as follows:

"Should the Contractor wrongfully cause damage to the work or property of any separate contractor, the Contractor shall upon due notice promptly attempt to settle with such other contractor by agreement, or otherwise to resolve the dispute. If such separate contractor sues or initiates an arbitration proceeding against the Owner on account of any damage alleged to have been caused by the Contractor, the Owner shall notify the Contractor who shall defend such proceedings at the Owner's expense, and if any judgment or award against the Owner arises therefrom the Contractor shall pay or satisfy it and shall reimburse the Owner for all attorneys' fees and court or arbitration costs which the Owner has incurred."

[14]Section 9.9.2 provides as follows:

"Neither the final payment nor the remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or his property might in any way be responsible, have been paid or otherwise satisfied, (2) consent of surety, if any, to final payment and (3), if required by the Owner, other data establishing payment or satisfaction of all such obligations, such as receipts, releases and waivers of liens arising out of the Contract, to the extent and in such form as may be designated by the Owner. If any Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify him against any such lien. If any such lien remains unsatisfied after all payments are made, the Contractor shall refund to the Owner all moneys that the latter may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees."

### 3. *The Architectural Contract*

A third document is entitled, "American Institute of Architects, AIA Document B141, Standard Form of Agreement Between Owner and Architect (1977 Edition)," executed by Interface and its architects McClellan/Cruz/Gaylord & Associates, Inc. on July 24, 1984 (the Architectural Contract). The Architectural Contract includes interlineations and additional conditions.

The Architectural Contract makes a single reference to recovery of attorney fees. This provision is contained in section 15.2, which is not part of the standard boilerplate language, but was added by the parties. The section requires that "[i]n the event legal action is commenced by either party hereto to enforce or interpret any provision of the Agreement, the prevailing party in such legal action shall be entitled to reasonable attorney's fees, as determined by the court."

### 4. *Project Manual*

Myers maintains that it is entitled to its attorney fees under certain provisions of the Project Manual prepared in connection with the project. The relevant provisions are as follows:

"SECTION 00232-SUPPLEMENTARY CONDITIONS

"MODIFICATIONS TO A.I.A. GENERAL CONDITIONS

"The A.I.A. General Conditions are modified as follows:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"CONTRACTOR'S LIABILITY INSURANCE

"Articles 11.1.1 to 11.1.3 of General Conditions shall be deleted and replaced with the following:

"CONTRACTOR'S LIABILITY

"A. Contractor shall indemnify, hold free and harmless, assume legal liability for, and defend Owner, his agents, servants, employees, officers, and directors from any and all loss, damages, liability, costs, and expenses, including but not limited to, attorney's fees, reasonable investigative and discovery costs, court costs, and other sums which Owner, his agents,

servants, employees, officers, and directors may pay, or become obligated to pay, on account of any, all, and every demand or claim, or assertion of liability, or any claim or action founded thereon, arising or alleged to arise out of Contractor's use of Owner's premises, the performance of this Agreement, the operation of Contractor's business, or any act or omission of Contractor, its agents, servants, or employees, whether such claim or claims, action or actions be for damages, injury to person or property, including Owner's property, or death of any person made by any person, group, or organization, whether employe[d] by Contractor, Owner, or otherwise, or for breach of warranty either express or implied.

"B. Owner shall not, under any circumstances, be liable or otherwise accountable to Contractor for any damage or injury to Contractor or to any agent or property of Contractor, however caused.

". . . . . . . . . . . . . . . . . . . . . .

"SECTION 01011-GENERAL REQUIREMENTS

"1.40 Payments:

". . . . . . . . . . . . . . . . . . . . . .

"As payments are made by the Owner, the Contactor shall pay promptly all valid bills and charges for labor, materials, or otherwise in connection with or arising out of the work and will hold Owner free and harmless against all liens filed against the property or any party thereof and from all expense and liability in connection therewith including, but not limited to, court costs, and attorney's fees resulting or arising therefrom."

 Myers maintains that the Project Manual, and its above quoted provisions are incorporated in the contract documents. The record reveals that the trial court entertained testimony on whether the Project Manual was intended by the parties to be a part of the contract documents. This testimony was in conflict.

 Extrinsic evidence is admissible to interpret a legal instrument so long as that interpretation is one of which the document is reasonably susceptible. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) Where extrinsic evidence is properly admitted for the purpose of interpreting a legal instrument, and that evidence is in conflict, we are bound by the trial court's interpretation with respect to such conflict, so long as it is reasonable. (*Id.* at p. 866.) Here, the

trial court admitted evidence on the question whether the contract documents incorporated the Project Manual. Unfortunately, in ultimately awarding attorney fees on a contract theory, the trial court did not identify in its minute order *which* provision of *which* contract document it relied upon, or whether the Project Manual was even relevant to that determination. Thus, while we would be bound by a trial court determination that the Project Manual was part of the contract documents, it is unclear that such a finding was made.

Nevertheless, upon an independent examination of the language of the Project Manual, the Construction Contract, and the General Conditions, we conclude that the Project Manual is included in the contract documents. ▉ Several documents concerning the same subject and made as part of the same transaction will be construed together even if the documents were not executed contemporaneously. (*Boyd* v. *Oscar Fisher Co.* (1989) 210 Cal.App.3d 368, 378 [258 Cal.Rptr. 473].) ▉ In this case, the Construction Contract provides at section 1.2.3, "the intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work." The Project Manual was prepared by the architects, was dated October 15, 1984, and appears to address all substantive aspects of the building project. It is reasonable to infer that it is an "item necessary for the proper execution and completion" of the project.

Moreover, the Project Manual directs that the General Conditions are to be considered a part of the Construction Contract, and then proceeds to revise and supplement those conditions. It also defines the terms "Contract" and "This Contract" as: "The particular Contract executed by the Contractor and the Owner including the Contract Documents and Amendments and all Directives from the Owner to Contractor issued under any provision of the Contract Documents of which these General Requirements are an integral part."[15]

Finally, the contract work is described in the General Requirements section of the Project Manual as "[w]ork is not limited to, but in general includes, the furnishing of all necessary material, equipment, transportation, and performing all labor for construction of concrete, masonry, and wood construction building as shown on the Contract Drawings *and/or Project Manual*." (Italics added.) Thus, the documents concern the same subject, were made as part of the same transaction, and make reference to each other.

---

[15]The "payments" language relied upon by Myers is found within the section entitled, "General Requirements." The indemnity provision is contained within the "Supplementary Conditions" section, under the heading, "Modifications to A.I.A. General Conditions."

B. *The Applicable Law*

We must determine whether the contractual provisions outlined above constitute unilateral attorney fee provisions within the meaning of Civil Code section 1717,[16] which makes such provisions reciprocal and applicable to the entire agreement. ■ "Unless authorized by either statute or agreement, attorney's fees ordinarily are not recoverable as costs." (*Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 127 [158 Cal.Rptr. 1, 599 P.2d 83].) Where a contract accords a right to attorney fees to one party but not the other, Civil Code section 1717 creates a statutory reciprocal right to attorney fees in all parties to the contract. (*Covenant Mutual Ins. Co.* v. *Young* (1986) 179 Cal.App.3d 318, 323 [225 Cal.Rptr. 861]; *Wilson's Heating & Air Conditioning* v. *Wells Fargo Bank* (1988) 202 Cal.App.3d 1326, 1332 [249 Cal.Rptr. 553].) Where a contract provides for attorney fees in an action to enforce the contract, the attorney fees provision is made applicable to the entire contract by operation of Civil Code section 1717. (*Boyd* v. *Oscar Fisher Co., supra*, 210 Cal.App.3d 368, 380; see *U.S. For Use and Benefit of Reed* v. *Callahan* (9th Cir. 1989) 884 F.2d 1180, 1186.)

Under California law, an "[i]ndemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties or of some other person." (Civ. Code, § 2772.) "An indemnity against claims, or demands, or liability, expressly, or in other equivalent terms, embraces the costs of defense against such claims, demands, or liability incurred in good faith, and in the exercise of a reasonable discretion . . . ." (Civ. Code, § 2778, subd. 3.) An indemnitor in an indemnity contract generally undertakes to protect the indemnitee against loss or damage through liability to a third person. (*Somers* v. *United States F. & G. Co.* (1923) 191 Cal. 542, 547 [217 P. 746].)

■ An indemnity agreement is to be interpreted according to the language and contents of the contract as well as the intention of the parties as indicated by the contract. (*Widson* v. *International Harvester Co.* (1984) 153 Cal.App.3d 45, 59 [200 Cal.Rptr. 136].) The extent of the duty to indemnify

---

[16]Civil Code section 1717 provides in pertinent part: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. [¶] Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract."

is determined from the contract. (*Herman Christensen & Sons, Inc.* v. *Paris Plastering Co.* (1976) 61 Cal.App.3d 237, 245 [132 Cal.Rptr. 86].) The indemnity provisions of a contract are to be construed under the same rules governing other contracts with a view to determining the actual intent of the parties. (*Ibid.*)

■■■ A clause which contains the words "indemnify" and "hold harmless" is an indemnity clause which generally obligates the indemnitor to reimburse the indemnitee for any damages the indemnitee becomes obligated to pay third persons. (*Varco-Pruden, Inc.* v. *Hampshire Constr. Co.* (1975) 50 Cal.App.3d 654, 660 [123 Cal.Rptr. 606].) Indemnification agreements ordinarily relate to third party claims. (*Ibid.*)

■■■ The precise issue involved in this case was addressed in *Meininger* v. *Larwin-Northern California, Inc.* (1976) 63 Cal.App.3d 82 [135 Cal.Rptr. 1].) In *Meininger*, a subcontractor and contractor entered into a written contract for painting work. A dispute arose between the parties and the subcontractor sued the contractor for breach of contract requesting attorney fees pursuant to Civil Code section 1717.

The subcontractor's request for attorney fees was based on the following contract provision:

" '13. SUBCONTRACTOR'S LIABILITY INSURANCE, INDEMNITY: . . . [The first paragraph of this section requires the subcontractor to maintain insurance to protect him from claims arising under workers' compensation laws, and from tort claims arising from damage to property or from bodily injury or death. The second paragraph continues as follows.]

" 'The Subcontractor shall indemnify and hold and save [the Contractor] harmless from and against any and all actions or causes of action, claims, demands, liabilities, loss, damage or expense of whatsoever kind and nature, *including counsel or attorney's fees*, whether incurred under retainer or salary or otherwise, *which [the Contractor] shall or at any time may sustain or incur by reason or in consequence of any injury or damage to person or property* which may arise directly or indirectly from the performance of this Contract by the Subcontractor, whether such performance be by himself or by any subcontractor of his, or anyone directly or indirectly employed by either of them.' " (*Meininger* v. *Larwin-Northern California, Inc., supra*, 63 Cal.App.3d at p. 84, italics in original.)

The trial court denied the subcontractor's request for attorney fees. The *Meininger* court affirmed stating:

"While paragraph 13 of the contract provides for attorneys' fees in certain situations, it does not specifically provide for attorney's fees *in an action on the contract* as is required to trigger operation of section 1717 of the Civil Code. Reading the entire paragraph 13 is helpful in interpreting the provision for attorney's fees. Since the heading reads 'SUBCONTRACTOR'S LIABILITY INSURANCE, INDEMNITY,' and since the first paragraph deals with tort claims of third parties, the reasonable and logical interpretation of the second paragraph is that it provides for attorney's fees in third[-]party tort actions (Civ. Code, § 1643). Reading the second paragraph of paragraph 13 as covering 'actions on the contract; would render it inconsistent with the balance of paragraph 13." (*Meininger* v. *Larwin-Northern California, Inc.*, *supra*, 63 Cal.App.3d at p. 85, italics in original.)

Citing a Ninth Circuit decision (*U.S. For Use and Benefit of Reed* v. *Callahan*, *supra*, 884 F.2d 1180), Myers contends that *Meininger* has no continued viability in light of an amendment to Civil Code section 1717 enacted by the Legislature in 1983. In that year, the Legislature amended Civil Code section 1717 to read: "Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract."[17] This amendment was enacted to overrule a Court of Appeal decision in *Sciarrotta* v. *Teaford Custom Remodeling, Inc.* (1980) 110 Cal.App.3d 444 [167 Cal.Rptr. 889].[18]

In *Sciarrotta*, an owner and contractor entered into a written contract for the construction of a house. The contract provided for an award of attorney fees to the contractor if it sued to recover the contract price. The owner sued the contractor for breach of contract based on the contractor's failure to construct the house in a workmanlike manner. The trial court denied the owner's request for attorney fees pursuant to the reciprocity provisions of Civil Code section 1717.

The *Sciarrotta* court affirmed, concluding that attorney fees could be recovered in an action on the contract only in those actions specifically delineated in the contract. Thus, the owner was not entitled to attorney fees in the action for breach of the contractual agreement to build a good quality house, where the attorney fee provision in the contract was limited to an action on the contract to collect the contract price.

---

[17]Interface does not argue that both parties were represented by counsel in the negotiation of the contract and such representation was specified in the contract.

[18]Comment of Senate Committee on Judiciary; July 11, 1983, Staff Comments, Assembly Committee on Judiciary (Sen. Bill No. 886 (1983-1984 Reg. Sess.) as amended June 29, 1983). The amendment was essentially consumer protection legislation.

The contractual provision at issue in *Reed, supra,* was similar to the one in *Sciarrotta* and permitted the contractor to recover its costs including attorney fees resulting from the subcontractor's failure to perform. The contractual provision at issue in *Reed* was not an indemnity clause. In *Reed,* the Ninth Circuit reasoned in dicta that since *Sciarrotta* had relied in part on *Meininger* and the Legislature had expressly overturned *Sciarrotta* with its 1983 amendment to Civil Code section 1717, *Meininger* was no longer good law. The Ninth Circuit failed to note that amended Civil Code section 1717 was applicable only to contractual provisions providing for an award of attorney fees incurred to enforce the contract. ██ ██ We conclude the Ninth Circuit's assessment of *Meininger*'s continued viability was incorrect.[19]

 In *Meininger,* the Court of Appeal concluded that the inclusion of attorney fees as an item of loss in a third party claim indemnity provision did not constitute a provision for the award of attorney fees "in an action on the contract as is required to trigger operation of section 1717 of the Civil Code." (*Meininger v. Larwin-Northern California, Inc., supra,* 63 Cal.App.3d at p. 85, italics omitted.) The 1983 amendment to Civil Code section 1717 did not alter *Meininger*'s conclusion because it provides only that where a contract supports an award of attorney fees in an action to enforce the contract, the attorney fee provision applies to the entire contract. A provision including attorney fees as an item of loss in an indemnity clause is not a provision for attorney fees in an action to enforce the contract. Accordingly, such a contractual indemnity provision is not made reciprocal and applicable to the entire contract by the 1983 amendment to Civil Code section 1717.[20]

Conversely, in *Sciarrotta,* the contract expressly provided for attorney fees to the contractor in an action on the contract to recover the contract price. That contractual provision was a limited attorney's fee provision in an action to enforce the contract. The Legislature recognized that to allow parties with superior bargaining strength to so limit attorney's fee provisions otherwise made reciprocal by Civil Code section 1717 would "thwart the salutary purposes sought to be achieved by the statute." (*Sciarrotta v. Teaford Custom Remodeling, Inc., supra,* 110 Cal.App.3d at p. 454 (dis. opn. of Tamura, P. J.); see also *Boyd v. Oscar Fisher Co., supra,* 210 Cal.App.3d at p. 380.) Accordingly, the 1983 amendment made such limited contractual attorney's fee provisions applicable to the entire contract.

---

[19]We are not bound by decisions of the Ninth Circuit on matters of California law. (*Bank of Italy Etc. Assn.* v. *Bentley* (1933) 217 Cal. 644, 653 [20 P.2d 940].)

[20]We note that attorney fees are recoverable by operation of law pursuant to Civil Code section 2778, subdivision 3, whether or not they are expressly mentioned in the indemnity clause.

Our conclusion that *Meininger* continues to be good law is consistent with a decision of the Court of Appeal made in the same year as the Ninth Circuit's decision in *Reed, supra.* (*Appalachian Ins. Co.* v. *McDonnell Douglas Corp.* (1989) 214 Cal.App.3d 1 [262 Cal.Rptr. 716].) Although *Appalachian* did not specifically discuss the relationship between Civil Code section 1717's statutorily imposed mutuality and a bargained-for contractual indemnity clause, it did conclude that Civil Code section 1717 did not authorize attorney fees under an indemnity clause which expressly reflected an intent not to award attorney fees under the conditions present in the case.

In *Appalachian*, McDonnell Douglas entered into a written contract with Western Union for the sale of an upper stage rocket to be used to launch a telecommunications satellite into orbit from the space shuttle. The rocket failed and the satellite was left in an unsuitable orbit. Appalachian Insurance Company and other insurers paid Western Union for the loss of the satellite. The insurers sued McDonnell Douglas and lost. The trial court denied McDonnell Douglas's request for attorney fees.

The sales contract at issue in *Appalachian* did not contain an express attorney fee provision. It did contain, however, the following indemnity clause: " '[*Western Union*] *shall indemnify and hold harmless* [*McDonnell Douglas*], *its officers, agents and employees from and against any and all liabilities, damages and losses, including costs and expenses in connection therewith*, for death of or injury to any persons whomsoever and for the loss of, damage to or destruction of any property whatsoever, caused by, arising out of or in any way connected with the launch or operation of the [telecommunications satellite].' " (*Appalachian Ins. Co.* v. *McDonnell Douglas Corp., supra*, 214 Cal.App.3d at p. 43, italics in original.)

The contract further provided that the indemnification provisions were not applicable to liabilities, damages or losses suffered under conditions such as those occurring in *Appalachian*. The Court of Appeal held that although the language of the indemnity clause might be generally sufficient to support an award of attorney fees to McDonnell Douglas under Civil Code section 2778, subdivision 3 (costs of defense statutorily included as item of loss in indemnification agreement), the indemnification provisions of the contract were expressly made inapplicable by the language of the contract to the circumstances at issue in the case. The Court of Appeal also held that Civil Code section 1717 would not operate to authorize an award of attorney fees to McDonnell Douglas under these circumstances. The *Appalachian* court impliedly determined that the right to attorney fees under an indemnity clause did not constitute a provision for award of attorney fees in an action to enforce the contract made applicable to all actions on the contract by operation of Civil Code section 1717. (Cf. *Citizens Suburban Co.* v. *Rosemont Dev. Co.* (1966) 244 Cal.App.2d 666, 683 [53 Cal.Rptr. 551].)

A contrary conclusion would defeat the purpose of an indemnity agreement. The very essence of an indemnity agreement is that one party hold the other harmless from losses resulting from certain specified circumstances. The provisions of Civil Code section 1717 were never intended to inflict upon the indemnitee the obligation to indemnify his indemnitor in similar circumstances. Indemnification agreements are intended to be unilateral agreements. The Legislature has indicated no intent to make them reciprocal by operation of law. Indeed a contrary intent is evidenced by Civil Code section 2778, subdivision 3, including attorney fees as a matter of law as an item of recoverable loss in an indemnity agreement. We note also that unilateral attorney fee provisions have also been provided for by statute under certain circumstances. (*Covenant Mutual Ins. Co.* v. *Young, supra,* 179 Cal.App.3d at pp. 323, 325, fn. 6 [holding that Civ. Code, § 1717's reciprocality requirement does not apply to one-way statutory attorney's fee provisions].)

### C. Do the Contract Documents Contain an Attorney Fee Provision?

We will now discuss the applicable law as it relates to the specific contractual provisions.

#### 1. The General Conditions

Section 4.18.1 is a standard indemnity provision requiring Myers to "indemnify and hold harmless" Interface from third party tort claims. Attorney fees are included as losses or expenses recoverable under the indemnity agreement. The section is not a provision providing for an award of attorney fees in an action to enforce the contract. (Compare with *Bruckman* v. *Parliament Escrow Corp.* (1987) 190 Cal.App.3d 1051, 1059 [235 Cal.Rptr. 813] [where the escrow agreement stated the parties agreed to pay the attorney fees of the escrow company arising out of the escrow].) Moreover, the indemnification provision encompasses only losses attributable to bodily injury or injury to tangible property, injuries not involved in this lawsuit.

Similarly, section 6.2.5 is a standard third party claims indemnification clause requiring Myers to indemnify Interface for damage caused by Myers to the work or property of another contractor.

Neither of these provisions constitutes a provision to award attorney fees in an action to enforce the contract. Both paragraphs are agreements to indemnify against third party claims which are not governed by Civil Code section 1717.

#### 2. The Architectural Contract

This agreement is solely between Interface and the architect. It contains an attorney fee provision within the meaning of Civil Code section 1717.

However, Myers is not a party to this contract. We fail to see how a rather straightforward attorney fee provision in a contract between the owner and architect may be relied upon by a contractor in its action against the owner. Apparently, Myers concedes this issue.

### 3. *The Project Manual*

Having determined that Interface is bound by the provisions of the Project Manual, we must next consider whether those provisions can support an award of attorney fees to Myers. The trial court did not receive extrinsic evidence on the meaning of the Project Manual provisions so the question is a purely legal one which we may address, unfettered by the trial court's interpretation. (*Parsons* v. *Bristol Development Co., supra*, 62 Cal.2d 861.) Each of the two Project Manual provisions identified by Myers is an agreement by which Myers will indemnify Interface for certain losses. Those losses can, of course, include attorney fees. (Civ. Code, § 2778, subd. 3.)

The first of the Project Manual provisions cited above is entitled, "Contractor's Liability." It replaces a provision requiring Myers to maintain liability insurance. The type of claim for which indemnification is provided is not limited to bodily injury or property damage, and embraces "any, all, and every claim" which arises out of "the performance of the contract." However, giving consideration to the ordinary meaning of the words used (Civ. Code, § 1644) together with the subject matter heading and giving effect to the entire provision (Civ. Code, § 1641), we conclude that the provision was intended to deal only with third party claims. This interpretation is made even clearer when paragraphs A and B are read together rather than in isolation, as Myers suggests. The ordinary meaning of paragraph B is that Interface will not be liable "under any circumstances" for "any damage or injury to" Myers. To the extent that paragraph A might conceivably provide a basis for Myers's attorney fee request, that possibility is neutralized by the wording found at paragraph B. Thus, under a strictly interpretive approach, the unambiguously expressed language cited does not support an award of attorney fees to Myers.

The second quoted provision provides that Myers will hold Interface harmless from third party claims arising from Myers's failure to pay its subcontractors promptly. As discussed previously, such claims or actions are not "actions on a contract"—between contracting parties—within the meaning of Civil Code section 1717.

We do not mean to suggest that Myers be punished for mere poor draftsmanship. This is an issue of fairness and notice to the contracting parties of the scope of the indemnification. (*Layman* v. *Combs II* (9th Cir. 1992) 981 F.2d 1093, 1100-1101; see also *Zissu* v. *Bear, Stearns & Co.* (2d

Cir. 1986) 805 F.2d 75, 79.) The very essence of an indemnity agreement is that one party hold the other harmless from losses resulting from certain specified circumstances.

### 4. *Conclusion*

Other than the attorney fee provision in the Architectural Contract which is not applicable to Myers, we conclude the contractual provisions at issue constitute third party claims indemnity clauses not subject to the provisions of Civil Code section 1717. ▄▄ ▄▄ Finding no contractual provision providing for an award of attorney fees in an action to enforce the contract, we strike the trial court's order awarding Myers its attorney fees.[21]

### DISPOSITION

The judgment is modified to strike the punitive damage and attorney fee awards. In all other respects, the judgment is affirmed. In the interests of justice, the parties are to bear their own costs on appeal.

Turner, P. J.,and Boren, J.,* concurred.

A petition for a rehearing was denied March 26, 1993, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied May 27, 1993.

---

[21]We reject Myers's vague and confusing argument that it is entitled to rely on attorney fee provisions in certain of the subcontracts which were assigned by subcontractors to Interface. Thus, the argument goes, Interface succeeded to the rights thereunder, including the right to attorney fees to enforce the subcontracts. Myers contends, without proper citations to the record, that Civil Code section 1717 should be applied to those fee provisions to support Myers's attorney fee award. We disagree.

First, Myers's brief specifically identifies only two such subcontracts, and the record makes plain that Interface was the prevailing party on those subcontracts. Myers seems to confuse the notion of prevailing in the lawsuit with that of prevailing "on the contract," which is required to obtain an attorney fee award under Civil Code section 1717. In this case, Myers prevailed on its action on the Construction Contract with Interface. That contract did not, however, contain an attorney fee provision. Interface prevailed by way of setoff in its actions against Myers on the subcontracts. The fact that Myers obtained a higher net recovery in the lawsuit is irrelevant to the determination of which party prevailed on any particular action on a contract. Moreover, even were Myers able to establish that it prevailed on a subcontract which contained an attorney fee provision entitling Myers to an award of attorney fees, such an award must be only for the pro rata portion of fees incurred to enforce that subcontract, and not for the entire amount of fees incurred in its action against Interface on the Construction Contract.

*Presiding Justice of the Court of Appeal, Second District, Division Two, sitting under assignment by the Chairperson of the Judicial Council.