*This case was not selected for publication in the Federal Reporter*
*NOT FOR PUBLICATION*

**Naren CHAGANTI, Plaintiff— Appellant,**

v.

**CERIDIAN BENEFITS SERVICES, INC.; Sun Microsystems, Inc., Defendants—Appellees.**

No. 04–17476.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 15, 2006.*

Filed Nov. 29, 2006.

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Naren Chaganti, Law Offices of Naren Chaganti, Los Angeles, CA, pro se.

Nancy Rader Whitehead, Esq., Scott, Reilly & Whitehead, Newport Beach, CA, Susan H. Roos, Esq., Michael E. Wilbur, Esq., Cook & Roos, LLP, San Francisco, CA, for Defendants–Appellees.

Before: KLEINFELD and THOMAS, Circuit Judges, and LEIGHTON **, District Judge.

### MEMORANDUM ***

Naren Chaganti ("Chaganti") appeals the district court's orders granting sum-

---

** The Honorable Ronald B. Leighton, United States District Judge for the Western District of Washington, sitting by designation.

mary judgment against him and in favor of his former employer, Sun Microsystems, Inc. ("Sun"), and the administrator of Sun's health plan, Ceridian Benefits Services ("Ceridian").

## I

■ The district court properly held that a Release and Waiver Agreement ("Release") that Chaganti had signed in exchange for additional severance pay was valid and enforceable, thus precluding all of Chaganti's wrongful discharge claims.

The district court correctly rejected Chaganti's assertion that the Release was void for public policy reasons because it allegedly contained a waiver of liability for future intentional torts. Cal. Civ.Code § 1668; *see also Baker Pacific Corp. v. Suttles*, 220 Cal.App.3d 1148, 1154, 269 Cal.Rptr. 709 (Cal.Ct.App. 1st Dist.1990) (holding that a contractual provision that has the effect of waiving liability for future intentional torts is void as against public policy). In this case, the Release clearly does not waive future torts. Although the contract takes effect on the eighth day after it is signed, the lag between signing and effect exists to provide the signor with seven days in which to revoke the contract. As a result, if Sun committed an intentional tort between signing and effect, the signor could revoke and sue. There is therefore no time during which Sun could commit intention torts with guaranteed impunity. The Release does not violate Cal. Civ.Code § 1668 or the public policy against waiver of liability for future intentional torts.

■ The district court also properly rejected Chaganti's theory that he was in-

---

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

duced to sign the Release by Sun's fraudulent nondisclosure of the true reasons for his discharge, namely his request for sick leave. To rescind a release agreement based on fraudulent nondisclosure, the releasee must show that he was unaware of the material non-disclosed fact and that he could not reasonably have discovered the material non-disclosed fact. *San Diego Hospice v. County of San Diego,* 31 Cal. App.4th 1048, 1055, 37 Cal.Rptr.2d 501 (Cal.Ct.App.1995). Here, it is undisputed that Chaganti knew that his employer was very displeased with his request for sick leave—the material fact that he alleges was not disclosed. The district court therefore properly granted summary judgment on Chaganti's claim of fraudulent inducement and fraudulent non-disclosure.

■ The district court did not err in concluding that the Release was not void for lack of consideration. Chaganti does not dispute that Sun paid him an amount of money that at least closely approximated the amount due under the Release. Additionally, California law does not require consideration for a release of obligation, Cal. Civ.Code § 1541, and a release of liability constitutes a release of obligation for purposes of § 1541. *Skrbina v. Fleming Companies, Inc.,* 45 Cal.App.4th 1353, 1366, 53 Cal.Rptr.2d 481 (1996).

■ The district court correctly rejected Chaganti's contention that the Release should be rescinded because Sun breached its terms (1) by depositing severance payments directly into his bank account instead of mailing them to his home address and (2) by under-paying by a margin of $14.55. Although these claims might support a cause of action for breach of contract, they do not justify rescission of the Release in the context of this suit.

The district court properly granted summary judgment on Chaganti's argument that the Release is unenforceable because he signed it after Sun's offer had expired. Chaganti contends that he was obliged to sign the Release by the end of business on December 20, 2001. The terms of the contract, however, do not include any provisions indicating that the offer expired on December 20. To the contrary, the Release provides only that the employee "has been given *at least* forty-five (45) days within which to consult with legal counsel with respect to this Agreement" (emphasis added). It also defines the effective date as "the eighth (8th) day after the date this Release and Waiver is signed and delivered to Sun," and states that the Agreement will not be effective "until dated, signed and returned to Sun."

■ Finally, the district court properly rejected Chaganti's argument that the Release was void for lack of mutuality because Sun never signed and returned the contract. Mutuality of obligation is necessary only where mutual promises—rather than monetary consideration—form the basis of the contract. *Sully–Miller Contracting Co. v. Gledson/Cashman Construction, Inc.,* 103 Cal.App.4th 30, 126 Cal.Rptr.2d 400 (2002) (" 'In essence, mutuality of obligation must exist where the exchange of promises between promisor and promisee is meant to represent the contract's consideration.' ") (*quoting Larwin–Southern California, Inc. v. JGB Investment Co.,* 101 Cal.App.3d 626, 637, 162 Cal.Rptr. 52 (1979)). Here, there is no dispute that Sun's obligation was financial.

In sum, none of Chaganti's attempts to void the Release agreement has any basis in the law or in the facts. The Release is enforceable, and the district court correctly held that it bars all of Chaganti's claims for unlawful discharge.

## II

■ Chaganti argues that the district court erred and abused its discretion in

awarding attorney's fees to Sun under the Release. Paragraph 10 of the Release reads:

> If a party to this Agreement brings a legal or administrative action, to challenge the validity of this Agreement, or brings an action pursuant to a debt, claim or liability that is hereby released and discharged and such party does not prevail in such action, then the party bringing such action shall be liable for and shall reimburse the other party's reasonable attorneys fees and costs incurred in defending such action.

Under this provision, the district court ordered Chaganti to pay $31,374.00 in attorney's fees. Chaganti raises essentially two challenges to the relevant provision, both of which fail.

First, Chaganti argues that the provision is unconscionable because it is both adhesive and one-sided. The district court properly rejected this argument based on *Myers Building Industries, Ltd. v. Interface Technology, Inc.*, 13 Cal.App.4th 949, 17 Cal.Rptr.2d 242 (1993), which held that the unconscionability doctrine does not apply to one-sided indemnification clauses because "indemnification agreements are intended to be unilateral agreements." *Id.* at 973, 17 Cal.Rptr.2d 242. The same logic applies with equal force here; a release agreement is clearly intended to be a unilateral agreement by which one party releases the other from all debts and obligations. In addition, the district court correctly observed that application of Cal. Civ.Code § 1717 precludes Chaganti's argument. That statute prevents courts from holding that attorney's fees provisions are unenforceable on unilaterality grounds because the provision statutorily transforms unilateral attorney's fees provisions into mutual attorney's fees provisions.

We also reject Chaganti's argument that the district court abused its discretion in the calculation of fees because Sun did not segregate fee charges that were not covered by the waiver agreement. The district court examined that question carefully and subtracted several time entries that were related to non-waived claims. Chaganti does not provide this court with any reason to believe that the district court's response to his objections was inadequate

### III

■ The district court did not abuse its discretion in denying Chaganti's Rule 56(f) motion for additional time to conduct discovery. To succeed on a Rule 56(f) motion, a litigant must show not only that she diligently pursued previous discovery opportunities but also that further discovery opportunities will reveal facts that will preclude summary judgment. *Id.* To satisfy the second requirement, the movant must "make clear what information is sought and how it would preclude summary judgment." *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987).

In this case, Chaganti's motion did not identify any admissible evidence he wished to develop that would have a bearing on the summary judgment motion. Rather, he only sought leave to develop inadmissible parol evidence to contradict the plain terms of the written waiver. The district court did not abuse its discretion in denying the motion.

### IV

■ The district court did not err in concluding that Ceridian does not qualify as an ERISA fiduciary. Under the Employee Retirement Income Security Act of 1974 (ERISA), one qualifies as an ERISA fiduciary of a health plan if he "exercises discretionary authority or discretionary

control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" or if he "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). To qualify as a fiduciary, a plan administrator must have the discretion to interpret provisions of the plan document and to make final decisions, even in the face of dispute, as to eligibility and benefits. *See IT Corp. v. General American Life Ins.*, 107 F.3d 1415 (9th Cir.1997).

In this case, there is no evidence that Ceridian interpreted plan provisions or made final decisions as to eligibility or benefits. In fact, the undisputed evidence in the record establishes that Ceridian performed only ministerial functions in the administration of Sun's COBRA plan. In support of his argument, Chaganti references email exchanged between himself and a Ceridian representative. However, communicating with beneficiaries about "their rights and [ ] options under the plan" is not a fiduciary act. *CSA 401(K) Plan v. Pension Professionals, Inc.*, 195 F.3d 1135, 1139 n. 2 (9th Cir.1999) (*quoting* Section 2509.75–8 of the Department of Labor regulations).

## V

■ The district court also did not err in rejecting Chaganti's claim of breach of fiduciary duty on the merits. Chaganti concedes that Sun had a legal right to terminate his coverage for failure to pay his premiums on time. His only claim is that his premium payment was not late under two statutory provisions: (1) 29 U.S.C. § 1162(3), which holds that the plan may not "require the payment of any premium before the day which is 45 days after the day on which the qualified beneficiary made the initial election of continuation coverage;" and (2) 29 U.S.C. § 1162(2)(C) which holds that benefits may be terminated for failure to pay premiums on time but that a premium must "be considered timely if made within 30 days after the date due or within such longer period as applies to or under the plan." Chaganti argues that the interaction of these two statutes and implementing regulations means that a second-month premium payment may not be required until 75 days after the initial election. That interpretation is at odds with the plain language of the statutory provisions, each of which references a different time period. Sun satisfied the requirements of § 1162(2)(C) by providing for a 30 day payment grace period for the July premium, following the premium due date of July 1. Sun satisfied the requirements of § 1162(3) by not requiring premium *payment* prior to July 17, 45 days after Chaganti made his June 2 election. Put another way, application of the grace period provision satisfied the condition that a plan not require payment within 45 days of the election because payment was not required until the end of the 30 day grace period.

Chaganti also argues that his late payment should be excluded because Sun breached other fiduciary duties in administering the plan, namely (1) failing to provide a health insurance card, (2) failing to provide for electronic payment by credit card, and (3) charging a lump sum for retroactive premiums.

■ As a factual matter, there is no foundation that an alleged breach of these duties precluded Chaganti from paying his premiums timely. The district court also properly concluded that these theories fail as a matter of law. Plan fiduciaries do not have a legal duty or fiduciary duty to provide a COBRA beneficiary with *second* copies of their plan documents and insurance cards. Sun was under no statutory,

contractual, or other fiduciary duty to provide for electronic payment by credit card. There is no restriction on a fiduciary seeking retroactive payment for premiums. The statute upon which Chaganti relies, 29 U.S.C. § 1162(3)(B), merely requires the plan to accept monthly installments if the plan beneficiary elects that option; Chaganti did not.

Chaganti finally argues that, as a matter of law, Sun should have applied Chaganti's payments for retroactive obligations to future coverage. However, there is no legal requirement that requires such allocation.

## VI

 The district court did not abuse its discretion in its calculation of an ERISA remedy for failure to notify. Under 29 U.S.C. § 1132(c)(1), the district court had the discretion to impose no penalty, to impose a per diem penalty of up to $100 per day, or to impose any "other relief as it deem[ed] proper." The district court concluded that Sun did not act in bad faith but that Chaganti was prejudiced in the amount of the retroactive premiums he paid. The court therefore established relief at $12 per day, deriving this figure by dividing his total financial injury by the number of days he was wrongfully denied coverage. Both determinations have ample support in the record.

## VII

The district court did not abuse its discretion in denying Chaganti's request for attorney's fees under ERISA. Under 29 U.S.C. § 1132(g)(1), the district court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." Here, the district court properly applied *Kay v. Ehrler,* 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991), which holds that *pro se* litigants may not recover attorney's fees even if the litigant is a licensed attorney. Chaganti alleges that he had actually assigned his cause of action to a third party and was retained by the third party to litigate the claim. However, there is no factual support for this assertion. Even if true, such an arrangement would merely be an unavailing artifice to avoid the *Kay* rule, which the district court was well within its discretion to reject.

**AFFIRMED.**

*This case was not selected for publication in the Federal Reporter*