[No. F051999. Fifth Dist. Aug. 20, 2008.]

CARR BUSINESS ENTERPRISES, INC., Plaintiff, Cross-defendant and Appellant, v.
CITY OF CHOWCHILLA, Defendant, Cross-complainant and Appellant;
INSURANCE COMPANY OF THE WEST, Cross-defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., II.A., and II.B.

**COUNSEL**

Hargrove & Costanzo and Neal E. Costanzo for Defendant, Cross-complainant and Appellant.

Law Offices of J. Michael Pisias, Jr., and Jason Z. Jungreis for Cross-defendant and Appellant.

Charles L. Doerksen for Plaintiff, Cross-defendant and Appellant.

**OPINION**

**WISEMAN, J.**—In the published portion of this opinion, we affirm the denial of a request for contractual attorney fees, concluding that the provision relied upon to authorize fees is a standard indemnity clause. We conclude these types of provisions do not create a reciprocal right to fees, despite a reference to performance of work under the contract.

In the unpublished portion of the opinion, we affirm an award of prejudgment interest payable on retention damages from the date the contract work was completed, despite the existence of offset claims and a dispute regarding liability.

## *PROCEDURAL AND FACTUAL HISTORIES*

In 1996, the City of Chowchilla (Chowchilla) contracted, in two separate agreements, with Carr Business Enterprises, Inc. (Carr), to do some improvement work on city streets and at the municipal airport. Insurance Company of the West (West) supplied the performance bond for Carr on the construction projects. A series of problems arose delaying the work, which was not finished within the contractual timeframe. Both projects ultimately were completed by July 1997. Additional costs were incurred by Carr, which Chowchilla refused to pay, and litigation followed, with Carr suing Chowchilla. In a cross-complaint, Chowchilla named Carr and West as cross-defendants.

By stipulation, the case was submitted to a referee. (Code Civ. Proc., § 638.) The referee was asked to try all issues of fact and law raised by the pleadings. After a lengthy trial, the referee issued a detailed statement of decision, finding for the most part in favor of Carr and West.[1] The referee awarded a total amount of $613,427.07 in damages, including $92,051.55 in retention damages; $126,017.31 in interest on the retention damages pursuant to Public Contracts Code section 7107; $34,129.62 for extra work performed but not compensated; and $361,228.59 in delay damages, including $32,838.96 for lost profits.

Chowchilla moved for a new trial. The trial court granted the motion and Carr appealed. In an opinion filed on March 14, 2006 (*Carr Business Enterprises, Inc. v. City of Chowchilla, supra*, F044630), we reversed the order granting a new trial, but held that the interest awarded by the referee pursuant to Public Contracts Code section 7107 was improper. We remanded for the trial court to determine whether Carr was entitled to prejudgment interest under some other authority and, if so, the amount. The trial court was advised to enter a new judgment in favor of Carr in the amount of $454,570.80, plus any prejudgment interest on retention damages found.

Upon remand, Carr and West filed their memorandum of costs and moved to fix attorney fees, including fees incurred on the first appeal, as an element of costs pursuant to a provision found in both the street-improvement contract

---

[1] We take judicial notice of our opinion in *Carr Business Enterprises, Inc. v. City of Chowchilla* (Mar. 14, 2006, No. F044630) (nonpub. opn.), the original complaint filed by Carr, the referee's statement of decision, and the declaration of Neal E. Costanzo in opposition to the motion to fix attorney fees as an element of costs filed in the trial court during the remand proceedings.

and the airport-improvement contract. Chowchilla opposed the motion to fix attorney fees as costs, argued against prejudgment interest, and filed a motion to tax costs. The matters were all heard on the same date.

After further proceedings, the trial court found that the retention damages were liquidated pursuant to Civil Code[2] section 3287, subdivision (a), and awarded Carr $81,686.28 as prejudgment interest on the retention damages. The trial court denied the request for fees, finding that the provision relied upon was a standard indemnity clause and therefore not a reciprocal-fee provision. The rulings on the motion to tax costs, the motion to fix attorney fees, and the motion to determine recoverability of prejudgment interest were incorporated into the final judgment, which was entered on October 17, 2006.

Chowchilla appealed, challenging the award of prejudgment interest. Carr and West filed cross-appeals contesting the denial of attorney fees.

### *DISCUSSION*

*I. Prejudgment interest*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*II.  Attorney fees*

   *A., B.*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

   *C.  Contract provisions*

Carr and West contend that the trial court erred in denying their request for attorney fees by improperly interpreting section 10 of the street-improvement contract and section 11 of the airport-improvement contract as standard indemnity provisions, applicable only to third party claims. Both argue that the provisions contemplate not only third party claims, but also claims on the contract itself.

---

[2] All further references are to the Civil Code unless otherwise stated.
[*]See footnote, *ante*, page 14.

■ "Where a contract provides for attorney fees in an action to enforce the contract, the attorney fees provision is made applicable to the entire contract by operation of Civil Code section 1717. [Citations.]"[4] (*Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 968 [17 Cal.Rptr.2d 242] (*Myers*).) Attorney fees authorized by contract are recoverable as costs pursuant to Code of Civil Procedure section 1033.5, subdivision (a)(10)(A). (*Bankes v. Lucas* (1992) 9 Cal.App.4th 365, 370–371 [11 Cal.Rptr.2d 723].) Under the American rule, attorney fees are not recoverable as costs unless expressly authorized by statute or contract. (*Selma Auto Mall II v. Appellate Department* (1996) 44 Cal.App.4th 1672, 1682 [52 Cal.Rptr.2d 599].)

Carr and West contend that section 10 of the street-improvement contract, found under the section title "Insurance Requirements for Contractors," and the provision heading, "Hold Harmless and Indemnification Agreement," authorizes an attorney fees award because its language includes within its scope actions arising out of the performance of the work provided for in the contract. The provision reads: "[Carr] shall indemnify and hold harmless [Chowchilla] . . . and its officers, officials, employees, agents of the above from and against all claims, damages, losses and expenses including attorney fees *arising out of the performance of the work* described herein, caused in whole or in part by any negligent act or omission of [Carr], any subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, except where caused by the active negligence, sole negligence, or willful misconduct of [Chowchilla]." (Italics added.)[5]

In contrast to the "Hold Harmless and Indemnification Agreement" section, the street-improvement contract contains section 9, a provision under the section title of "Indemnity Agreement," which reads: "[Carr] agrees to indemnify and save harmless [Chowchilla], Giersch & Olson, Inc., their

---

[4] Section 1717 provides that fees are recoverable "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees . . . ."

[5] The airport-improvement contract contains an essentially identical provision in section 11, with the same section and provision titles. There are two indemnity clauses, with nearly identical language, in both the street-improvement contract and the airport-improvement contract. The other is section 9 in the street-improvement contract and section 10 in the airport-improvement contract. We refer only to the provisions appearing in the street-improvement contract, but our analysis and conclusion apply equally to both contracts.

agents and employees, for and against all loss or expense (including costs and attorney fees) on account of injury or death of persons employed by [Carr], or his subcontractors, his or their agents or employees; injury to or death of any other person; or injury to, damage or destruction of property, real or personal, including loss of use thereof. Upon demand, [Carr] shall defend any suits or actions covered by the terms of this agreement."

The section goes on to require that, before commencing work, Carr was to obtain insurance coverage for comprehensive general liability, automobile liability, and worker's compensation. In addition, Carr was required to acquire the performance bond issued by West.

On remand, the trial court agreed with Chowchilla and found that the above provisions were standard indemnity provisions, which do not authorize attorney fees on a dispute arising out of the contract. We begin our analysis with several basic principles relating to indemnity clauses. "An indemnity against claims, or demands, or liability, expressly, or in other equivalent terms, embraces the costs of defense against such claims, demands, or liability incurred in good faith, and in the exercise of a reasonable discretion . . . ." (§ 2778, subd. 3.) Generally, the inclusion of attorney fees as an item of loss in a third party claim-indemnity provision does not constitute a provision for the award of attorney fees in an action on the contract which is required to trigger section 1717. (*Myers, supra,* 13 Cal.App.4th at pp. 971–973; *Meininger v. Larwin-Northern California, Inc.* (1976) 63 Cal.App.3d 82, 84–85 [135 Cal.Rptr. 1] (*Meininger*).) "A clause which contains the words 'indemnify' and 'hold harmless' is an indemnity clause which generally obligates the indemnitor to reimburse the indemnitee for any damages the indemnitee becomes obligated to pay third persons. [Citation.] Indemnification agreements ordinarily relate to third party claims. [Citation.]" (*Myers, supra,* 13 Cal.App.4th at p. 969.) An indemnity agreement is to be interpreted according to the language and contents of the contract, as well as the intention of the parties as indicated by the contract, using the same rules that govern the interpretation of other contracts. (*Widson v. International Harvester Co.* (1984) 153 Cal.App.3d 45, 59 [200 Cal.Rptr. 136]; *Herman Christensen & Sons, Inc. v. Paris Plastering Co.* (1976) 61 Cal.App.3d 237, 245 [132 Cal.Rptr. 86].)

At first glance, the language of section 10 of the street-improvement contract seems to extend beyond third party claims. However, a survey of the relevant case authority suggests it does not. In *Myers, supra,* 13 Cal.App.4th 949, the court found the following provision to be a standard third party

claim-indemnification clause and not a provision allowing recovery of fees on an action upon the contract, despite its reference to performance of the contract work: " 'To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner and the Architect and their agents and employees from and against all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting *from the performance of the Work*, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom and (2) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder . . . .' " (*Myers, supra*, 13 Cal.App.4th at pp. 963–964, italics added.)

The first class of claims identified in the *Myers* provision is similar to those claims covered by section 9 in the street-improvement contract—third party tort liability claims resulting from damage or injury to persons or property. However, the second class identified in this provision is nearly identical to the class of claims addressed in section 10, i.e., claims of any person arising out of or resulting from the contract performance. This language acknowledges the distinction between the two classes of claims, which would explain the inclusion of both section 9 and section 10 in the street-improvement contract.

Likewise, the following provision has also been held to be a standard indemnity provision not subject to section 1717: " 'The Subcontractor shall indemnify and hold and save [the Contractor] harmless from and against any and all actions or causes of action, claims, demands, liabilities, loss, damage or expense of whatsoever kind and nature, *including counsel or attorneys' fees*, whether incurred under retainer or salary or otherwise, *which [the Contractor] shall or may at any time sustain or incur by reason or in consequence of any injury or damage to person or property* which *may arise directly or indirectly from the performance of this Contract by the Subcontractor*, whether such performance be by himself or by any subcontractor of his, or anyone directly or indirectly employed by either of them.' " (*Meininger, supra*, 63 Cal.App.3d at p. 84, some italics added.)

In this instance, the court found helpful the headings assigned to the provision by the parties: " 'Subcontractor's Liability Insurance, Indemnity.' " (*Meininger, supra*, 63 Cal.App.2d at p. 84.) In addition, the headings in both

the contracts suggest that the parties intended the clauses to relate to indemnity not attorney fees.

Finally, the court in *Campbell v. Scripps Bank* (2000) 78 Cal.App.4th 1328 [93 Cal.Rptr.2d 635] interpreted the following provision in an escrow agreement to be a standard indemnity clause and not a clause providing for mutual recovery of attorney fees on an action under the agreement: " 'If conflicting demands are made or notice served on you or any dispute or controversy arises between the Principals or with any third person relating to this escrow, you shall have the absolute right, at your election, to withhold and stop all further proceedings in this escrow without liability and without determining the merits of the demands, notices, or litigation; or sue in interpleader; or both. The Principals, jointly and severally, hereby promise and agree to pay promptly on demand, as well as to indemnify you and hold you harmless against and in respect of any and all litigation and interpleader costs, claims, losses, damages, recoveries, judgments, and expenses, including, without limitation, reasonable attorneys fees that you may incur or suffer, *which arise, result from or relate to this escrow*.' " (*Campbell v. Scripps Bank, supra*, 78 Cal.App.4th at p. 1336, italics added.)

In contrast, the court in *Baldwin Builders v. Coast Plastering Corp.* (2005) 125 Cal.App.4th 1339, 1344 [24 Cal.Rptr.3d 9], concluded the following language authorized a recovery of attorney fees to the prevailing party after litigation: " 'The undersigned Subcontractor hereby agrees to indemnify [Contractor] . . . against any claim, loss, damage, expense or liability arising out of acts or omissions of Subcontractor in any way connected with the performance of the subcontract . . . unless due solely to [Contractor's] negligence . . . . Subcontractor shall, on request of [Contractor] . . . but at Subcontractor's own expense, defend any suit asserting a claim covered by this indemnity. Subcontractor shall pay all costs, *including attorney's fees, incurred in enforcing this indemnity agreement*.' " (*Baldwin Builders v. Coast Plastering Corp., supra*, 125 Cal.App.4th at p. 1342, italics added.)

In distinguishing the above language from the language found in *Myers, Meininger* and *Campbell*, the *Baldwin* court focused on the italicized language of the last sentence, which authorizes the recovery of attorney fees where one of the parties to the agreement brings an action to enforce the indemnity agreement, in other words, "on the contract." (§ 1717.) The court found that the attorney fees clause was located in an indemnity provision that unambiguously contemplated an action between the parties to enforce their agreement (a point conceded by counsel) and expressly authorized recovery

of fees in such an action. In this situation, the court held that section 1717 would apply.

Likewise, in *Continental Heller Corp. v. Amtech Mechanical Services, Inc.* (1997) 53 Cal.App.4th 500 [61 Cal.Rptr.2d 668] (*Continental*), the court concluded that language similar to that in *Myers, Meininger,* and *Campbell,* including the obligation to indemnify from all loss, damage, etc., " 'including attorney's fees' which 'arises out of or is in any way connected with the performance of work under this Subcontract,' " would not support an award of fees under section 1717. (*Continental, supra,* at pp. 508–509.) However, the court determined that language elsewhere in the contract that specifically contemplated an action on the contract would support an award of fees. Language obligating the subcontractor to " 'indemnify the Contractor, and save it harmless from any and all loss, damage, costs, expenses and attorney's fees suffered or incurred *on account of any breach of the aforesaid obligations and covenants, and any other provision or covenant of this Subcontract,*' " was sufficient to signal the intent of the parties to entitle the prevailing party to attorney fees in any action brought for breach of any provision of the contract, including the breach of the indemnity provisions. (*Id.* at pp. 508–509.)

We conclude that the language of the indemnity provision here more closely parallels the language found in *Myers, Meininger,* and *Campbell,* than the language examined in *Baldwin* and *Continental.* Unlike in *Baldwin,* there is no express language authorizing recovery of fees in an action to enforce the contract. Instead, the language authorizes fees as an expense of litigation that Carr agreed to pay in any action brought by another person arising out of the performance of the contract. The intent was to ensure that Chowchilla did not suffer any damages if, as a result of Carr's negligence or willful misconduct, it became embroiled in litigation with a third party. We agree that, because "an indemnity agreement is intended by the parties to unilaterally benefit the indemnitee, holding it harmless against liabilities and expenses incurred in defending against third party tort claims (see Civ. Code, § 2772), application of reciprocity principles would defeat the very purpose of the agreement." (*Baldwin Builders v. Coast Plastering Corp., supra,* 125 Cal.App.4th at p. 1344, citing *Myers, supra,* 13 Cal.App.4th at p. 973.) We also agree that section 1717 does not bring within its scope indemnity provisions that allow recovery of attorney fees as an element of loss within the scope of the indemnity. (*Myers, supra,* at p. 971.)

Having cited no other grounds upon which to recover fees from the prevailing party, the American rule applies, and each party is responsible for its own attorney fees.

## *DISPOSITION*

The judgment is affirmed. Each party shall bear its own costs on appeal.

Vartabedian, Acting P. J., and Gomes, J., concurred.