FILED

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SEP 27 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SCIE LLC, a Nevada Limited Liability Company, DBA Entertainment Partners Services Group; PAYPIX LLC, a Nevada Limited Liability Company, DBA EPSG Pixpay Services, | No. 08-56502 |
| | D.C. No. 2:03-cv-02782-CAS-FMO |
| Plaintiffs - Appellants, | |
| | MEMORANDUM [*] |
| v. | |
| XL REINSURANCE AMERICA, INC., FKA NAC Reinsurance Corporation; STAR INSURANCE COMPANY, | |
| Defendants - Appellees. | |

| | |
|---|---|
| SCIE LLC, a Nevada Limited Liability Company, DBA Entertainment Partners Services Group; PAYPIX LLC, a Nevada Limited Liability Company, DBA EPSG Pixpay Services, | No. 08-56537 |
| | D.C. No. 2:03-cv-02782-CAS-FMO |
| Plaintiffs - Appellees, | |
| v. | |
| XL REINSURANCE AMERICA, INC., | |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted March 2, 2010
Pasadena, California

Before:    KOZINSKI, Chief Judge, W. FLETCHER, Circuit Judge, and
           GETTLEMAN,[**] Senior District Judge.

This action involves a long-running dispute over unpaid payroll services for the motion picture "The Devil and Daniel Webster" ("the film"). Plaintiffs SCIE LLC and Paypix LLC, known as Entertainment Partners, provided payroll services to the film's producers ("producers"). Entertainment Partners won an arbitration award against producers on December 7, 2001, but was unable to collect. After the film encountered financial difficulties, defendants Star Insurance Co. and XL Reinsurance America, Inc. (collectively "Star/XL"), the reinsurers of the film's completion bond, acquired the film. Entertainment Partners then sought to collect from Star/XL. In a prior decision, we upheld the jury's finding that Star/XL,

---

[**]    The Honorable Robert W. Gettleman, United States District Judge for the Northern District of Illinois, sitting by designation.

which accepted the benefit of Entertainment Partners's provision of payroll services to the film, was liable for the producers' unpaid obligations to Entertainment Partners.  We remanded for a new trial on damages.

On remand, the district court awarded plaintiffs the principal amount of the arbitration award.  In addition, it awarded attorney's fees and expenses incurred by plaintiffs in the arbitration against producers, in confirming the arbitration award, in efforts to collect from producers, and in the effort to collect against Star/XL (that is, the instant action).  It also awarded plaintiffs prejudgment interest on the principal amount from the date of the Ninth Circuit's memorandum disposition, and prejudgment interest on costs following trial from the date of the first judgment.  It denied prejudgment interest on the fees and expenses incurred in arbitration.  Both sides appeal.  We AFFIRM the award of attorney's fees incurred in the arbitration and in the related efforts to confirm the award and collect from producers, and REVERSE the award of attorney's fees and expenses for the instant litigation.  We REVERSE the district court's award of prejudgment interest and REMAND with instructions as to the award of interest.

I

Defendants challenge plaintiffs' legal entitlement to attorney's fees and expenses pursuant to the terms of the contracts, a question of law we review *de*

3

*novo*. *See V.S. ex rel. A.O. v. Los Gatos-Saratoga Joint Union High Sch. Dist.*, 484 F.3d 1230, 1232 (9th Cir. 2007).

The district court did not err in awarding plaintiffs the attorney's fees and expenses incurred in arbitrating against producers, confirming the arbitration award, and in attempting to collect from producers. The contracts contemplated the arbitration of disputes. Clause 15, which addressed arbitration, provided, "The prevailing party shall be entitled to reimbursement of all costs and expenses including reasonable attorney's fees." Under California law, "a contract provision that permits the recovery of fees in arbitration is broad enough to include fees in related judicial proceedings." *Ajida Techs., Inc. v. Roos Instruments, Inc.*, 87 Cal. App. 4th 534, 552 (2001). As the contract contemplated, Entertainment Partners arbitrated its dispute with producers. When producers did not pay the arbitration award, Entertainment Partners initiated judicial proceedings against producers to confirm and collect on the award. Under Clause 15 and *Ajida*, Entertainment Partners is entitled to its attorney's fees and expenses incurred in these related proceedings.

We have already held that having assumed the benefit of the contract and undertaken to perform it, Star/XL is liable for the producers' contractual obligations to Entertainment Partners. *See* Cal. Civ. Code § 1589. These

4

obligations include not only producers' obligation to pay for the provision of services, but also their obligation to pay attorney's fees and expenses incurred in arbitration, in confirming the award, and in the effort to collect on the arbitration award from producers. *See E. Quincy Servs. Dist. v. Gen. Accident Ins. Co. of Am.*, 88 Cal. App. 4th 239, 245 (2001) (holding surety liable for defaulting contractor's obligations, including penalties incurred prior to default as a result of contractor's violation of prevailing wage and maximum work hour requirements).

However, we hold that the district court erred in awarding plaintiffs the attorney's fees and expenses incurred in their efforts to collect against Star/XL. Entertainment Partners contends that Clauses 12 and 15 of the contracts support the district court's award. We conclude that neither clause permits recovery.

Clause 12, which contains the terms "indemnify," "hold harmless," and "defend," is an indemnity clause. As a California Court of Appeal recently reaffirmed, "[a] clause which contains the words 'indemnify' and 'hold harmless' is an indemnity clause . . . . Indemnification agreements ordinarily relate to third party claims." *Carr Business Enterprises, Inc. v. City of Chowchilla*, 166 Cal. App. 4th 14, 20 (2008) (quoting *Myers Building Indus. v. Interface Tech., Inc.*, 13 Cal. App. 4th 949, 969 (1993)). An indemnity provision that includes an obligation to indemnify "from all loss, damage, etc., 'including attorney's fees'

5

which 'arises out of or is in any way connected with the performance of work under this Subcontract'" does not entitle a party to the contract to attorney's fees incurred in prosecuting an action for breach of the contract. *See Continental Heller Corp. v. Amtech Mech. Servs., Inc.*, 53 Cal. App. 4th 500, 508 (1997). However, California courts have allowed recovery of fees in an action for breach based on a fees clause located within an indemnity provision when that provision "unambiguously contemplated an action between the parties to enforce their agreement . . . and expressly authorized recovery of fees in such an action." *Carr*, 166 Cal. App. 4th at 22-23; *see Continental Heller*, 53 Cal. App. 4th at 508-09.

Under Clause 15, the parties were to arbitrate disputes, and attorney's fees and expenses would be awarded to the prevailing party. Entertainment Partners did not arbitrate its dispute with Star/XL under Clause 15. Under Clause 12, the duty to indemnify arose only when parties became liable to third parties as a result of their action, inaction, or breach of the contract. Neither clause expressly authorized the recovery of fees and expenses in litigation between the parties. *See Carr*, 166 Cal. App. 4th at 22-23.

II

The parties dispute whether the district court should have awarded prejudgment interest. They also dispute the date from which prejudgment interest

6

should run. We affirm the district court's decision to award prejudgment interest on the principal amount of the unpaid invoices but reverse as to the date from which the interest runs. We direct the district court to award prejudgment interest on the awards of attorney's fees and expenses that we uphold.

California Civil Code § 3287(a) provides that prejudgment interest must be awarded when the requirements of "certainty" and "vesting" are satisfied. In *Evanston Insurance Company v. OEA, Inc.*, 566 F.3d 915, 921 (9th Cir. 2009), we explained that "California cases uniformly have interpreted the 'vesting' requirement as being satisfied at the time that the amount of damages become certain or capable of being made certain, not the time liability to pay those amounts is determined."

Entertainment Partners submitted invoices that were due and payable upon receipt. Star/XL was ultimately found liable to pay the unpaid amount of the invoices. Because the *amount* of Entertainment Partners's unpaid invoices was "certain" as of the date the invoices were submitted and not paid, Entertainment Partners's right to recover vested on that date. Accordingly, Entertainment

7

Partners is entitled to prejudgment interest on each invoice due and unpaid from the date of the invoice.[1]

Entertainment Partners is also entitled to prejudgment interest on the fees and expenses awards from the date that their amounts were made certain. The award of fees and expenses incurred in arbitration was fixed and made certain at the time of the arbitration award on December 7, 2001. It is irrelevant that Star/XL's liability to pay that amount was not determined until later. *See Evanston Ins.*, 566 F.3d at 921. The fees and expenses incurred in confirming the award and collecting against producers were made certain in the district court's decision on August 11, 2008 quantifying the award.

Accordingly, we hold that the district court erred in failing to award prejudgment interest on the principal amount from the dates of the invoices, on the award for attorney's fees and expenses incurred in arbitration from the date of the arbitrator's award, and on the award for attorney's fees and expenses incurred in confirming the award and attempting to collect from producers from August 11, 2008. We remand for a calculation of interest.

III

---

[1] To the extent any invoice was ultimately paid late in part or in full, the district court shall award interest on the unpaid amount for the time in which that amount was due and unpaid.

The parties also dispute the date upon which prejudgment interest stops running and postjudgment interest commences. Prejudgment interest ordinarily runs (if at all) up to the date of final judgment, at which point postjudgment interest begins to run. *See, e.g.*, *AT&T v. United Computer Sys., Inc.*, 98 F.3d 1206, 1208 (9th Cir. 1996). Where there are multiple judgments, "post-judgment interest may run only from the date of a judgment later determined to be supported by the evidence. It may not run from a legally insufficient judgment, or one where the 'damages have not been "ascertained" in any meaningful way.'" *Planned Parenthood v. ACLA*, 518 F.3d 1013, 1021 (9th Cir. 2008) (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 836 (1990)). "As between two judgments, both of which sufficiently ascertain the damages, equitable principles favor selecting the judgment which more fully compensates the prevailing party." *Id.* (citing *AT&T*, 98 F.3d at 1211).

The first judgment, issued on April 6, 2005, did not ascertain damages for Entertainment Partners. The second judgment, issued on September 2, 2008, did ascertain damages. The circumstances of the September 2, 2008 judgment are materially indistinguishable from the second judgment issued in *AT&T*, from which the court ran the award of post-judgment interest in that case. Therefore, all awards of prejudgment interest (including on the award of costs following trial)

9

run up to the entry of the second judgment on September 2, 2008.  Postjudgment interest runs at the appropriate federal rate from that date forward.

Each party shall bear its own costs on appeal.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**

**KOZINSKI**, Chief Judge, dissenting:

I would affirm under Clause 12 of the contract the district court's award of the attorney's fees Entertainment Partners incurred suing Star/XL. Clause 12 has four provisions. Provision 1 commits Star/XL to indemnify Entertainment Partners against losses "arising out of the services <u>performed</u>" by the personnel Entertainment Partners hired for Star/XL. Contract ¶ 12 (emphasis added). Provision 2 obligates Entertainment Partners to indemnify Star/XL against losses "arising out of [its] negligence or wrongful acts, errors or omissions . . . in the <u>performance</u> of its services hereunder." <u>Id.</u> (emphasis added). I agree with the majority that these are third-party indemnification provisions. <u>See</u> <u>Carr Bus. Enters., Inc.</u> v. <u>City of Chowchilla</u>, 82 Cal. Rptr. 3d 128, 134–35 (Cal. Ct. App. 2008); <u>Myers Bldg. Indus., Ltd.</u> v. <u>Interface Tech., Inc.</u>, 17 Cal. Rptr. 2d 242, 256–58 (Cal. Ct. App. 1993).

But Provisions 3 and 4, which refer to costs arising out of a breach of the contract, aren't obviously third-party provisions. <u>See</u> <u>Meininger</u> v. <u>Larwin-N. Cal., Inc.</u>, 135 Cal. Rptr. 1, 2 (Cal. Ct. App. 1976) (distinguishing "actions on the contract" from "tort claims of third parties" that arise out of performance of the contract). Provision 3 requires Star/XL to "indemnify, defend and hold harmless"

Entertainment Partners against "any and all costs and expenses (including, but not limited to, reasonable attorney's fees) . . . arising out of . . . breach or alleged breach" of the contract. Contract ¶ 12. Provision 4 is a reciprocal promise by Entertainment Partners to do the same for Star/XL. Id.

Provisions 3 and 4 are like the fee-shifting provision in Continental Heller Corporation v. Amtech Mechanical Services, Inc., which the court construed to cover attorney's fees the parties incurred suing each other. 61 Cal. Rptr. 2d 668, 673 (Cal. Ct. App. 1997). The contract in that case had a third-party provision indemnifying a general contractor for losses "aris[ing] out of or . . . in any way connected with the performance of work under this [contract]." Id. A second provision obliged the subcontractor to "indemnify the [general c]ontractor, and save it harmless from any and all . . . costs, expenses and attorney's fees suffered or incurred on account of any breach of the aforesaid obligations and covenants, and any other provision or covenant of this [contract]." Id. (emphasis omitted). The court held that this second provision shifted the attorney's fees the parties incurred enforcing the contract because third-party claims were already covered by the first provision. Id.; see also Baldwin Builders v. Coast Plastering Corp., 24 Cal. Rptr. 3d 9, 14 (Cal. Ct. App. 2005).

Continental Heller controls our reading of the contract here: "It is clear [that

Provisions 3 and 4 are] not referring to indemnity for attorney fees incurred in defending actions brought against [either side by a third party because t]hat indemnity is covered in [Provisions 1 and 2]." Cont'l Heller, 61 Cal. Rptr. 2d at 673. The fact that the provision in Continental Heller doesn't use the term "defend" doesn't distinguish it from Provisions 3 and 4 because every promise to "indemnify" and "save . . . harmless" includes an implied duty to "defend." Cal. Civ. Code § 2778, subd. (4). To give effect to every part of the contract, Cal. Civ. Code § 1641, we should construe Provisions 3 and 4 to cover breach of contract suits between the parties.

Myers and Carr aren't to the contrary. Those cases addressed indemnity provisions that referred to performance of the contract. See Myers, 17 Cal. Rptr. 2d at 252 (indemnifying against losses "arising . . . out of . . . the performance of this Agreement"); Carr Bus. Enters., 82 Cal. Rptr. 3d at 131 (indemnifying against losses "arising out of the performance of the work described herein" (emphasis omitted)). More importantly, Myers and Carr refused to construe an indemnity clause in favor of one party (the indemnitee) to cover suits to enforce the contract because doing so would trigger California Civil Code § 1717, California's reciprocal attorney's fees statute. Section 1717 converts every unilateral right to attorney's fees incurred enforcing a contract into a reciprocal obligation granting

attorney's fees to the prevailing party, even if that party is not the one entitled to fees under the text of the contract. <u>Santisas</u> v. <u>Goodin</u>, 951 P.2d 399, 406 (Cal. 1998). <u>Myers</u> and <u>Carr</u> reasoned that parties to a contract don't intend to obligate indemnitees to pay their indemnitors' attorney's fees. See <u>Myers</u>, 17 Cal. Rptr. 2d at 256 ("The provisions of Civil code section 1717 were never intended to inflict upon the indemnitee the obligation to indemnify his indemnitor in similar circumstances."); <u>Carr Bus. Enters.</u>, 82 Cal. Rptr. 3d at 135 ("[B]ecause 'an indemnity agreement is intended by the parties to unilaterally benefit the indemnitee, . . . application of reciprocity principles would defeat the very purpose of the agreement.'"). That's not a problem here. Provisions 3 and 4 <u>are already reciprocal</u>, so section 1717's reciprocity principle wouldn't impose an obligation the parties didn't already intend. Thus, <u>Myers</u> and <u>Carr</u> don't justify the majority's departure from Clause 12's clear and explicit language. <u>See</u> Cal. Civ. Code § 1638.