Filed 1/24/14  Voyager Assocs. v. Superior Court CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| VOYAGER ASSOCIATES, INC., | D063731 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. 37-2011-0059852-CU-NP-NH) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| TYCO FIRE PRODUCTS, L.P., | |
| Real Party in Interest. | |


PROCEEDINGS in mandate after the superior court denied motion to quash.

Timothy M. Casserly, Judge.  Petition granted.


Pyka Lenhardt Schnaider Zell and David P. Lenhardt, Daniel J. Kolcz for

Petitioner.

Shook, Hardy & Bacon, Darth K. Vaughn for Real Party in Interest.

In this writ proceeding, petitioner Voyager Associates, Inc. (Voyager), a successor company to Thompson Plastics, Inc. (TPI), an Alabama corporation, challenges the denial of its motion to quash the service of summons and cross-complaint of real party in interest Tyco Fire Products, L.P. (Tyco) on grounds California lacked jurisdiction over petitioner and its CEO, Bernard Thompson, also an Alabama resident. (Code Civ. Proc., § 418.10.) In denying the motion to quash, the court relied exclusively on an insurance and indemnification clause in the parties' contract, which it interpreted as permitting jurisdiction in California.

We issued an order to show cause on June 5, 2013, and now grant the writ petition because the indemnity clause provides an insufficient basis to permit a California court to exercise jurisdiction in this matter. The service of summons and cross-complaint should have been quashed for lack of personal jurisdiction in California.

FACTUAL AND PROCEDURAL BACKGROUND

This case stems from a subrogation lawsuit filed after State Farm General Insurance (State Farm) sued Tyco for $284,211.00 in water damage that a burst fire sprinkler caused to Ted Vincent's California property in December 2008.

TPI was sold in 2005 and changed its name to Voyager. In August 2011, Voyager was dissolved under Alabama law. Tyco is the successor company of Central Sprinkler Company (CSC) (Tyco/CSC) and is the distributor, designer, installer or supplier of the allegedly defective fire sprinkler. Tyco/CSC does business in California, but it is unclear from the court filings where Tyco is incorporated or has its headquarters. Under the parties' 1992 manufacturing and distribution agreement (contract), Tyco/CSC required

2

Voyager to manufacture Chlorinated Polyvinyl Chloride (CPVC) piping and fittings in Alabama.

The trial court relied on the following evidence for its ruling on the motion to quash: the contract and declarations by Bernard Thompson and Kirk Thompson, Voyager's president. Tyco did not include any declaration in its opposition papers.

Bernard Thompson and Kirk Thompson stated in declarations that they never lived in California or owned property in this state, and they believed the same applied to other Voyager shareholders. They each added, "I do not personally conduct business in California and have no business contacts with the state of California." Both men declared Voyager was not registered to do business in California and had no employees here and it never advertised with any billboards or in any newspapers or magazines in California. Although it had a Web site, it never selectively advertised to California residents or offered special promotions specifically to California residents.

The contract's indemnity clause states: "TPI shall be solely responsible for the quality of manufacture of the Product for CSC, shall assume all liability in the event that the Product should fail prior to or during field service, and shall indemnify, defend, and hold harmless CSC, its officers, employees and agents from any claims, liabilities or expenses. CSC shall be named as an additional insured and loss payee on TPI's general and product liability insurance policies and shall act as an intermediary in subrogating all . . . material, labor and damage claims with TPI's insurance carrier. Certificates of general and product liability insurance shall be provided by TPI to CSC."

3

The contract obligated Voyager to ship the finished piping to Tyco/CSC's customers and distribution centers: "TPI shall be responsible for loading and shipping the Product from its [Alabama] facility to CSC's customers and distribution centers. TPI shall utilize freight carriers recommended and procured by CSC to transport the Product unless CSC requests TPI to make the carrier selection based on better service and/or better freight rates that can be obtained. All freight costs shall be the responsibility of CSC."

Bernard Thompson confirmed in his declaration that he did not ship piping that Voyager manufactured specifically for Tyco/CSC to any entity in California except Tyco/CSC: "I cannot recall a shipment of CSC brand CPVC pipe ever going directly to a CSC customer in California. . . . [] . . . [Voyager] did not sell or put into the stream of commerce, [Tyco/CSC] brand name piping to anyone, it just took [Tyco/CSC's] raw product and by using [Tyco/CSC] machinery and molds, made the [Tyco/CSC] finished product and shipped the product to various [Tyco/CSC] distribution centers throughout the United States."

State Farm's subrogation lawsuit alleged causes of action for negligence, strict liability and breach of warranty. State Farm claimed Tyco/CSC had designed, manufactured, sold, distributed and supplied the fire sprinkler, which "had defects that included the [fire sprinkler] forming cracks because of improper processing of [the fire sprinkler's] material at the manufacturing level, which would ultimately cause the subject line to burst during normal, foreseeable use."

4

Tyco/CSC filed an unverified cross-complaint against Voyager and Bernard Thompson, alleging causes of action for equitable and contractual indemnity, bad faith and declaratory relief. Tyco/CSC sought as damages, among other things, complete indemnity for any judgments rendered against it.

Voyager specially appeared in the superior court to move to quash the service of summons and cross-complaint. In opposing general jurisdiction in California, it argued that since about December 2004, it had ceased shipping pipes to this state and no longer had substantial, continuous or systematic contacts here. In opposing specific jurisdiction, it argued it had not availed itself of the benefits of doing business in California; rather, it had simply extruded the raw material using Tyco/CSC's equipment to create finished piping that it sent to Tyco/CSC distribution facilities throughout the United States. Voyager reasoned, "Such circumstances show [it] was not a manufacturer in the sense that court's [*sic*] have discussed the issue concerning personal jurisdiction, but rather was more along the lines of a contractor who performed a very specific job for [Tyco/CSC] in Alabama." Voyager added, "Moreover, even if [it] was considered a manufacturer, it was merely a component part supplier of a certain type of piping that CSC used in the production of other products such [as] sprinkler systems. As such, California does not have specific jurisdiction over [it]."

Voyager also noted it had had only limited contacts with California: "The only contact [it] had with California was when it shipped [Tyco/CSC's] brand name CPVC piping to [Tyco/CSC] distribution centers. This is not a case where [petitioner] sold [its own] product to a California customer. The contract with [Tyco/CSC] was prepared and

5

signed outside of California. The contract not only states that the final product, but the raw material used to make the product, is the property of [Tyco/CSC]." Petitioner pointed out that in manufacturing the piping, it was required to use Tyco/CSC's machines and molds.

Voyager argued the indemnification clause did not suffice to create jurisdiction in California: "Nowhere in the contract does [Voyager] agree to submit to California's jurisdiction. If it had planned to do so, it would have included a forum selection clause in the contract." On the issue of the reasonableness of jurisdiction in California, [Voyager] argued, "It is unfair to drag [it], a dissolved Alabama corporation . . . into a California court for damages when [its] only contact . . . was sending [Tyco/CSC] its own product that it owned in raw form in Alabama. [Voyager] was not selling the CPVC piping to California. It was already the property of [Tyco/CSC]. As such, the contact with California was [Tyco/CSC], not [Voyager] or Bernard Thompson."

Voyager contended jurisdiction was more appropriate elsewhere: "Huntsville, Alabama, was the principle [*sic*] place of business for TPI. Moreover, anyone who worked on the machines extruding the pipes are most likely still situated in Alabama. The underlying claim by the homeowner in California is settled. Therefore, this case comes down to a company suing a small family owned company located in Alabama and its principal, who lives in Alabama. The pipe was made in Alabama and [Voyager] had no contacts with California. Given these facts, it is not reasonable for Voyager to defend the case in California, instead of in Alabama, where the parties and factory were located."

6

Tyco/CSC opposed the motion to quash, arguing that in June 1995, Voyager had manufactured the pipe used in the fire sprinkler; therefore, under the indemnity clause, petitioner was liable: "By agreeing to manufacture and distribute the pipe and accepting liability for any alleged product defects, [Voyager] effectively availed itself to those forums where end users made claims, including California. In other words, [Voyager] verified its purposeful intent to submit to California court jurisdiction by prospectively agreeing to defend against product liability claims through the manufacturing and distribution agreement. The insurance and indemnification provision contains no limiting language or any qualification regarding applicable jurisdictions." (Some capitalization omitted.) Tyco/CSC noted that the contract required petitioner to add Tyco/CSC as an additional insured under both its general and product liability policies.

The court granted the motion to quash as to Bernard Thompson. However, it denied the motion as to Voyager, finding that the indemnification clause supported specific jurisdiction in California. The court ruled: "[Voyager] contractually consented to the jurisdiction of those forums where parties brought claims involving alleged product failures, as has occurred in the underlying case. Here, by agreeing to manufacture and distribute the pipe and accepting liability for any alleged product defects, [Voyager] arguably availed itself to forums where end users made claims, which includes California."

7

DISCUSSION

## I. *Standard of Review*

"When a nonresident defendant challenges personal jurisdiction, the plaintiff must prove, by a preponderance of the evidence, the factual basis justifying the exercise of jurisdiction. [Citation.] The plaintiff must do more than merely allege jurisdictional facts; the plaintiff must provide affidavits and other authenticated documents demonstrating competent evidence of jurisdictional facts. [Citation.] If the plaintiff does so, the burden shifts to the defendant to present a compelling case that the exercise of jurisdiction would be unreasonable." (*BBA Aviation PLC v. Superior Court* (2010) 190 Cal.App.4th 421, 428-429.) "In this analysis, the merits of the complaint are not implicated." (*F. Hoffman-La Roche, Ltd. v. Superior Court* (2005) 130 Cal.App.4th 782, 794.) "Where the evidence of jurisdictional facts is not in conflict, we independently review the trial court's decision." (*Malone v. Equitas Reinsurance* (2000) 84 Cal.App.4th 1430, 1436.)

## II. *Law Regarding Jurisdiction*

"State courts will assert personal jurisdiction over nonresident defendants which have been served with process only if those defendants have such minimum contacts with the state to ensure that the assertion of jurisdiction does not violate ' " ' "traditional notions of fair play and substantial justice" ' " ' [Citations.] 'It is well-established that only " ' "random," "fortuitous," or "attenuated" contacts' " do not support an exercise of personal jurisdiction. [Citation.] In analyzing such issues, the courts have rejected any use of " 'talismanic jurisdictional formulas.' " [Citation.] Rather, " ' "the facts of each

8

case must [always] be weighed" in determining whether personal jurisdiction would comport with "fair play and substantial justice." ' " ' " (*CenterPoint Energy, Inc. v. Superior Court* (2007) 157 Cal.App.4th 1101, 1117.)

"Minimum contacts" may support either general or specific jurisdiction. (*Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 569.) " ' "Specific jurisdiction results when the defendant's contacts with the forum state, though not enough to subject the defendant to the general jurisdiction of the forum, are sufficient to subject the defendant to suit in the forum on a cause of action related to or arising out of those contacts. [Citations.] Specific jurisdiction exists if: (1) the defendant has purposefully availed itself of forum benefits with respect to the matter in controversy; (2) the controversy is related to or arises out of the defendant's contacts with the forum; and (3) the assertion of jurisdiction would comport with fair play and substantial justice." ' " (*CenterPoint Energy, Inc. v. Superior Court*, *supra*, 157 Cal.App.4th at p. 1117, italics omitted; *Helicopteros Nacionales de Columbia v. Hall* (1984) 466 U.S. 408, 414-415 [in determining whether specific jurisdiction exists, courts generally look to the relationship among the defendant, the forum, and the litigation].)

The purposeful availment inquiry focuses on the defendant's intentionality. This prong is only satisfied when the defendant purposefully and voluntarily directs its activities toward the forum so that it should expect, by virtue of the benefit it receives, to be subject to the court's jurisdiction based on its contacts with the forum. (*Helicopteros Nacionales de Columbia v. Hall*, *supra*, 466 U.S. at pp. 414-415.)

9

A controversy is related to or arises out of the defendant's forum contacts so as to satisfy the second requirement for the exercise of specific personal jurisdiction, if there is "a *substantial connection* between the forum contacts and the plaintiff's claim." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 452.)

In determining whether the exercise of jurisdiction would be fair and reasonable so as to satisfy the third requirement for the exercise of specific personal jurisdiction, a court must consider (1) the burden on the defendant of defending an action in the forum, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining relief, (4) the interstate [or international] judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the states' or nations' shared interest in furthering fundamental substantive social policies. (See *Anglo Irish Bank Corp., PLC v. Superior Court* (2008) 165 Cal.App.4th 969, 979.)

### III. *Analysis*

We conclude that on this record there was insufficient evidence to support the claim that California was entitled to exercise jurisdiction over petitioner. There is no basis for general jurisdiction because Voyager did not have substantial, continuous and systematic contacts with California. Tyco/CSC submitted no evidence supporting specific jurisdiction. Further, the declarations submitted by Voyager show it does not conduct business in California besides shipping to Tyco/CSC the manufactured piping that Tyco/CSC had contracted for.

Tyco/CSC's reliance on the indemnification clause is misplaced because that standard clause does not create jurisdiction. We interpret the indemnity clause de novo

10

because there is no material conflict in the evidence and, further, the court did not rely on any extrinsic evidence to interpret it. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865; *Great-West Life Assurance Co. v. Guarantee Co. of North America* (1988) 205 Cal.App.3d 199, 204.) We rely on the particular language of the clause using ordinary rules that govern the interpretation of contracts. (*Carr Business Enterprises, Inc. v. City of Chowchilla* (2008) 166 Cal.App.4th 14, 20.) This means we interpret the clause as a whole and in context of the entire contract. (Civ. Code, § 1641; *Campbell v. Scripps Bank* (2000) 78 Cal.App.4th 1328, 1337.)

The indemnification clause, as is typical of such clauses, relates exclusively to the requirement that Voyager assume all liability for any product failure, and indemnify Tyco/CSC from any liabilities or expenses. It also requires Voyager to name Tyco/CSC as an additional insured on its insurance policy. There is no reference in the indemnity clause to "jurisdiction," "forum," "venue," "California;" or any other term that would indicate where the parties intended to litigate any claims or disputes arising out of their agreement. Accordingly, the indemnity clause may not be reasonably interpreted as requiring jurisdiction in California. Tyco/CSC does not cite any case permitting a state to exercise jurisdiction solely based on an indemnification clause, and we found none. We further note that the contract does not include a forum selection clause, which is ordinarily where the parties would specify their intentions regarding the appropriate forum for resolving their disputes. In light of the lack of evidence to support jurisdiction in California, the trial court erred in denying Voyager's motion to quash.

11

DISPOSITION

Let a writ issue directing the superior court to vacate its order of February 22, 2013, and enter an order granting the motion of Voyager Associates, Inc. to quash the service of summons and cross-complaint.  Voyager Associates, Inc. is entitled to recover costs.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)  The opinion will be final as to this court on February 6, 2014.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)


O'ROURKE, J.

WE CONCUR:


McINTYRE, Acting P. J.


IRION, J.

12