Filed 4/29/15  Spanish Inn v. Goodell CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SPANISH INN, INC. et al., | D066966 |
| Cross-complainants and Appellants, | |
| v. | (Super. Ct. No. INC1104681) |
| RALPH GOODELL et al., | |
| Cross-defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Riverside, John G. Evans, Judge.  Affirmed.

Law Offices of Nejat Kohan, Nejat Kohan; and James S. Link for Cross-Complainants and Appellants.

Milberg & De Phillips, Russell M. De Phillips and Roy Carlson, Jr., for Cross-defendants and Respondents.

This is one of many appeals arising from litigation over the renovation of a hotel property in Palm Springs.  This one arises from a cross-complaint filed by the developer against its architects alleging breach of contract and professional negligence.  The trial

court granted the architects' summary judgment motion, finding the developer lacked standing because it had absolutely assigned its interests in the architects' contract to the construction lender. The developer contends the trial court erred in its interpretation of the assignment agreement because the assignment was conditioned on the developer's default and no such default had yet occurred. We independently construe the assignment agreement and conclude it absolutely assigns the developer's rights. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The appellants are Spanish Inn, Inc. (Spanish Inn) and its two shareholders, Hormoz Ramy and Nejat Kohan (together, cross-complainants). In or about 1995, Ramy purchased a resort complex in Palm Springs known as the Spanish Inn (Property). In 2002 Ramy and Kohan teamed up to renovate the Property. On September 26, 2005, Spanish Inn and an architecture firm, Brittany West, entered into a work order for architectural services, as modified, for certain architectural services in connection with the Property (the Architect's Contract).[1]

On April 18, 2008, Spanish Inn and Nara Bank entered into a construction loan agreement documenting a $6 million loan by Nara Bank to Spanish Inn (the Loan Agreement). The same day, Spanish Inn executed an "Assignment of Architect's Contracts" (the Assignment Agreement), under which Spanish Inn assigned its rights and

_____

[1]     Brittany West's initial proposal was dated September 7, 2005. Respondent Ralph (Skip) Goodell signed Spanish Inn's counterproposal on Brittany West's behalf on September 26, 2005. We refer collectively to Brittany West and Goodell as cross-defendants.

2

interest in the Architect's Contract to Nara Bank. Brittany West consented to the assignment.

Spanish Inn encountered delays in its renovation of the Property and Nara Bank ultimately declared Spanish Inn to be in default. Nara Bank sued to foreclose on the Property, and cross-complainants filed a cross-complaint against (among others) cross-defendants. In their operative seventh amended cross-complaint, cross-complainants assert causes of action against cross-defendants for breach of contract and professional negligence.[2] In their answer, cross-defendants assert as an affirmative defense that "[cross-complainants] have assigned any and all purported claims they assert against [cross-defendants] and that they lack standing to bring this action against [cross-defendants]."

Cross-defendants moved for summary judgment on the theory that cross-complainants lacked standing by virtue of their assignment of the Architect's Contract to Nara Bank via the Assignment Agreement. Cross-complainants' three-page-long opposition argued cross-complainants had standing because the Assignment Agreement's assignment was not absolute, but rather, was conditioned on Spanish Inn's default under the Loan Agreement, the occurrence of which cross-complainants asserted was a triable

---

2 Cross-complainants do not explain in their operative pleading or on appeal how Ramy or Kohan had standing to assert claims arising from a contract to which they were not parties—only Spanish Inn and Brittany West were. We need not address this issue, and will assume, for purposes of this appeal only, that if Spanish Inn had standing, then Ramy and Kohan did too.

issue of fact.  The trial court granted respondents' motion and entered judgment in their favor.

Cross-complainants timely appealed.

DISCUSSION

Cross-complainants contend the trial court erred by granting summary judgment based on an erroneous construction of the Assignment Agreement as providing for an absolute, as opposed to conditional, assignment of the Architect's Contract.  They further contend that under their construction, there is a triable issue of fact regarding whether the Assignment Agreement's purported triggering condition occurred.

*Legal Framework*

We review de novo an order granting a motion for summary judgment.  (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 860 (*Aguilar*).)  Summary judgment is appropriate if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  "To demonstrate that an action has no merit, a defendant often will seek to establish that each cause of action alleged in the complaint has no merit, either because one or more of the elements of the cause of action cannot be separately established or because the defendant has an affirmative defense to the cause of action.  (See [Code Civ. Proc.]*,* subd. (*o*).)  It is possible, however, for a defendant to defeat an action on a motion for summary judgment without attacking each cause of action separately, for example, by showing the action has no merit because the plaintiff lacks standing."  (*Lickter v. Lickter* (2010) 189 Cal.App.4th 712, 736; *Scott v. Thompson*

4

(2010) 184 Cal.App.4th 1506, 1510 ["Lack of standing is a fatal jurisdictional defect that requires judgment against the plaintiff."].)

Cross-defendants contend cross-complainants lacked standing to pursue the asserted claims because Spanish Inn assigned its rights and interest in the Architect's Contract to Nara Bank. "Once a claim has been assigned, the assignee is the owner and has the right to sue on it. [Citations.] In fact, once the transfer has been made, the assignor lacks standing to sue on the claim." (*Johnson v. County of Fresno* (2003) 111 Cal.App.4th 1087, 1096.) Thus, whether cross-complainants have standing to sue depends on the scope of the assignment under the Assignment Agreement.

" '[I]nterpretation of a contract is subject to de novo review where the interpretation does not turn on the credibility of extrinsic evidence.' " (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 520.) "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636; *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.) "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.) "Where contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further." (*Ticor Title Ins. Co. v. Employers Ins. of Wausau* (1995) 40 Cal.App.4th 1699, 1707 (*Ticor*).)

5

*Analysis*

We conclude the Assignment Agreement assigned cross-complainants' right to sue on claims arising under that agreement and, thus, cross-complainants lacked standing.

The Assignment Agreement's "Assignment of Contracts" clause is clear and explicit:  "[Spanish Inn] hereby grants, transfers, and assigns to [Nara Bank] *all of [Spanish Inn]'s present and future rights, title and interest in and to . . .* the contract between [Spanish Inn] and BRITTANY WEST (the 'Architect') dated September 7, 2005 ('Architect's Contract')."  (Italics added.)  The "Power of Attorney" clause reinforces that Spanish Inn assigned its rights under the Assignment Agreement to Nara Bank: "[Spanish Inn] *irrevocably appoints* [*Nara Bank*] *as* [*Spanish Inn*] *'s attorney-in-fact* with full power of substitution, at [Nara Bank]'s option; but with no obligation to do so, *to enforce* [*Spanish Inn*]*'s rights . . . under the Contract*, either in [Spanish Inn]'s name or in [Nara Bank]'s own name."  (Italics added.)  Under this clear and explicit language, we must conclude the Assignment Agreement unconditionally assigned "all of [Spanish Inn]'s rights, title and interest in and to" the Assignment Agreement unless doing so would "lead to absurd results."  (*Ticor, supra*, 40 Cal.App.4th at p. 1707; Civ. Code, § 1638.)

Spanish Inn argues it would be absurd to interpret the Assignment Agreement as making anything other than a *conditional* assignment.  In support, Spanish Inn cites the agreement's "Lender's Rights" clause, which provides, in pertinent part, as follows: "Unless and until a default shall occur under the Loan or under any of the Loan documents, [Nara Bank] shall not exercise any of [Spanish Inn]'s rights under the

Architect's Contract, provided, however, that from and after the time of any such default, [Nara Bank] immediately shall become entitled, but shall not be obligated, to exercise any rights of [Spanish Inn] under the Architect's Contract, and [Spanish Inn] shall have the right to use or possess the plans, specifications, drawings, and models referred to above and at [Nara Bank]'s option, to perform [Spanish Inn]'s obligations under the Architect's Contract, if any."

Cross-defendants counter that this clause does not limit the scope of *Spanish Inn's assignment* of its rights, but rather, only limits *the timing of Nara Bank's exercise of those rights*. This argument is supported by the fact that the Assignment Agreement's "Assignment of Contracts" clause uses unqualified, absolute language, while the conditional language cross-complainants cite appears in the "Lender's Rights" clause. (See, e.g., *Carr Business Enterprises, Inc. v. City of Chowchilla* (2008) 166 Cal.App.4th 14, 21-22 [finding headings helpful in construing contract].) As respondents put it, "The language relied on by [cross-complainants] does not mean that further action was necessary to transfer the rights [to Nara Bank]. Rather, it simply limits the use of the rights that have been transferred. [¶] The Assignment [Agreement] contemplated an immediate transfer of rights so that in the event of a default nothing more was needed to be done by Nara Bank to enforce the terms of the Architect's Contract. An absolute assignment with an affirmative enforcement step does not change the absolute nature of the assignment." We agree.

Cross-complainants elaborate on their absurdity theory with the following hypothetical scenario: "Had the project been completed and the lender repaid[, cross-

7

defendants] would still be claiming they were not liable for the alleged negligence and breach of contract. [Citation] The bank, having been paid, would not have wanted to pursue an action for which the damages only belonged to Spanish Inn. Spanish Inn would have suffered a compensable injury for which (under [cross-defendants'] interpretation) there would be no right to pursue." Demonstrating the hypothetical nature of this scenario, cross-defendants counter that "[Nara Bank] could assert the claim under the power of attorney or allow [Spanish Inn] to do so," but cross-complainants never alleged, nor sought to introduce evidence showing, that they ever "attempted to request that [Nara Bank] assert the claims and [Nara Bank] refused to do so."

Further demonstrating the hypothetical nature of cross-complainants' absurdity scenario is their acknowledgement that Nara Bank declared Spanish Inn to be in default. Although cross-complainants contend that whether Spanish Inn was truly in default is a triable issue of fact,[3] we need not reach that issue because we have already concluded Spanish Inn's assignment of the Architect's Contract to Nara Bank was unconditional.

---

[3]    Cross-complainants argue "that any failure of performance by [Spanish Inn] was the result of breaches of the loan agreement by the lender and that [Spanish Inn] was not legally in default." Cross-complainants' briefing states that Spanish Inn's default is at issue in two other appeals—*Spanish Inn, Inc. v. Nara Bank et al.* (Mar. 6, 2015, D066487) and *Pacifica L 39 LLC v. Ramy et al.* (B255803)—both of which were resolved by Courts of Appeal against Spanish Inn after cross-complainants completed their briefing in this appeal. Spanish Inn petitioned the Supreme Court for review of our decision in the former, which petition is still pending. (*Spanish Inn, Inc. v. Nara Bank et al.* (S225750).) The Supreme Court denied Ramy and Kohan's petition for review of the decision in the latter. (*Pacifica L 39 LLC v. Ramy et al.* (S224955).)

DISPOSITION

The judgment is affirmed.  Cross-defendants are entitled to their costs on appeal.


NARES, J.

WE CONCUR:


BENKE, Acting P. J.


McINTYRE, J.

9