Filed 8/19/20  Street v. Greer CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHRISS W. STREET, | |
| Plaintiff and Respondent, | G055418 |
| v. | (Super. Ct. No. 30-2011-005125738) |
| PHILLIP B. GREER, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Hugh Michael Brenner, Judge.  (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed in part and reversed in part.

Phillip B. Greer, in pro. per., for Defendant and Appellant.

The RDM Legal Group and Russel D. Myrick for Plaintiff and Respondent.

\* \* \*

A jury determined Phillip B. Greer was liable (for over $10 million) for fraud and professional negligence, based on his conduct representing Chriss W. Street in a bankruptcy proceeding.  On appeal, Greer asserts there was insufficient evidence to

support the jury's verdict on the fraud claim.  He does not challenge the professional negligence judgment, or the corresponding $7,583,589.70 damages award.

We conclude that although there was evidence of fraudulent concealment, we read the jury's poorly drafted special verdict form as asking only if there was evidence of an intentional misrepresentation about a specific deed before trial.  After carefully reviewing the record, we found no evidence of this specific affirmative intentional misrepresentation.  Accordingly, we cannot uphold a fraud verdict for which there is an essential element missing.  We reverse the judgment as to the fraud claim and reduce the award of damages by $2,416,410.30.  In all other respects, we affirm the judgment.

## FACTUAL BACKGROUND

### I. *Prior Bankruptcy Action*

In 1996, the Fruehauf Trailer Corporation filed for bankruptcy.  The resulting reorganization plan included the creation of a liquidating trust, which was intended to sell off all the corporation's assets to repay creditors.  Street was named Trustee of the resulting liquidating trust, aptly named "The End of the Road Trust" (the Trust).  Its express purpose was "conserving and liquidating the Trust Estate [ . . . ] with no objective to engage in the conduct of a trade or business."

### II. *Prior Lawsuit Against Street*

Over 10 years later (2008), Daniel Harrow, in his capacity as the Trust's successor trustee, brought an action against Street alleging Street misused trust funds, violated his fiduciary duty, and engaged in direct self-dealing as trustee.  Specifically, Harrow alleged Street overcompensated himself, used the Trust's funds for personal credit card expenses, and acquired and operated a new entity, American Trailer.  Street hired Greer as his attorney in the adversary proceedings before the bankruptcy court.

We need not provide a detailed summary of the entire case because Greer does not dispute he acted negligently in representing Street.  Suffice it to say, Greer failed to present expert testimony, evidence, and exhibits, or identify and argue for a favorable

2

legal standard for his client. We focus our summary of facts on evidence related to the challenged fraud claim.

In August 2009, Harrow sent Street a proposed list of stipulated facts, requesting Street's responses to each fact. Street forwarded the list to Greer, along with detailed contentions refuting over 53 of the 81 facts. Greer passed along Street's list of disputed facts to Harrow, but then declined to contest any of the 81 facts before trial started. In March 2010, the court ruled in Harrow's favor, awarding over $7 million in damages.

III. *The Underlying Action*

The following year, Street filed a complaint against Greer and his law firm.[1] He alleged Greer was liable for professional negligence and fraud (intentional misrepresentation).[2]

The second cause of action for fraud specifically pleaded the following misconduct: "Contrary to [Street's] numerous instructions to not agree to any false or misleading [s]tipulated [f]acts; [Greer] apparently signed or allowed to become approved without material (or perhaps any) changes false and misleading [s]tipulated [f]acts to [opposing counsel's] draft pre-trial order. . . . [¶] [Greer] continued to falsely and dishonestly assure [Street] that no [s]tipulated [f]acts had been approved before trial. It was not until trial had begun, that [Street] realized [Greer] had approved or allowed to be approved the pre-trial order that contained the false and misleading [p]roposed [s]tipulated [f]acts. [¶] Judgment at trial was entered against [Street] based on false and misleading [s]tipulated [f]acts approved in the pre-trial order."

Because Greer maintained the professional negligence claim was barred by the one-year statute of limitations, the trial court agreed to bifurcate the action and

---

[1] The law firm is not party to this action.

[2] During trial, Street voluntarily dismissed the third cause of action asserting violations of Business and Professional Code section 17200.

3

consider the limitations defense separately from the merits of the case. After considering arguments from both parties, the court ruled in Street's favor, explaining, "Greer provided no credible testimony or other evidence at trial that established that he in fact ceased representing Street" and "[Greer's] purported conclusion that the attorney-client relationship had ended was based only on his own 'inference.'" The case proceeded to a jury trial on the merits.

A. *Professional Negligence*

With respect to the professional negligence cause of action, Street demonstrated how Greer's multiple acts of misconduct led to an adverse ruling at the bankruptcy trial. For example, Street provided evidence of the following actions: (1) Greer's failure to dispute facts created an unfavorable and misleading foundation at trial; (2) Greer's ability to present a robust defense was eliminated by admission of stipulated facts; (3) Greer failed to present evidence and call certain witnesses essential to Street's defense; and (4) Greer underprepared his one expert witness. After a few questions, Greer withdrew the witness's testimony and, consequently, the court refused to accept into evidence the expert's report. Two experts testified Greer's conduct fell below the standard of care of a bankruptcy attorney and his conduct was the primary reason for the adverse judgment in the proceeding.

Greer's defense to the professional negligence claim was that Street was indisputably guilty of violating his trustee obligations and breaching his fiduciary duties. Greer asserted his conduct had no bearing on the bankruptcy court's decision. He blamed Street for some of the questionable trial tactics, such as insisting they hire an ineffectual expert witness who may have been intoxicated.

B. *Intentional Misrepresentation*

In contrast to his negligence claim, Street's fraud cause of action focused on only one facet of the bankruptcy case, i.e., Greer's misconduct regarding the proposed stipulated facts. Specifically, Street testified that as part of the underlying bankruptcy proceeding, Harrow sent him the draft of proposed stipulated facts. Street responded to

4

each "fact" individually in an e-mail sent to Greer. Street recalled that Greer acknowledged receiving the e-mail and responded as follows: "'This is great. This is all the information we need, and I'm going to send it off to [the opposing counsel].'" Street's e-mail was then forwarded to Harrow, further cementing Street's expectation the defense plan was to contest 53 of the 81 proposed facts.

Later at trial, Street learned that, without his consent, Greer stipulated to the facts as they were. Street presented evidence Greer missed a crucial pretrial conference where he could have contested the proposed stipulated facts. In Greer's absence, the bankruptcy judge accepted Harrow's version of the facts as being the controlling stipulated facts.

In his defense, Greer offered no clear explanation as to how the facts were stipulated to. He maintained that missing the pretrial conference had no negative consequences in the case. He claimed to have never affirmatively stipulated to any of the facts. Alternatively, he asserted the facts were indisputable, and therefore, it did not matter he did not contest them.

Furthermore, Greer argued he never misrepresented his intentions but conceded he failed to discuss changes to the defense plan with Street. Greer also tried to establish the unimportance of the stipulated facts by showing the bankruptcy court considered evidence outside of the stipulated facts.

At the close of Street's case, Greer moved for nonsuit on the grounds there had been "no evidence introduced [of] any of the elements for fraud being a representation of a material fact that was knowingly false." When the court noted there were other types of fraud such as concealment, Greer's counsel noted the complaint alleged a specific intentional misrepresentation. Street's counsel seemed to agree the fraud claim was based on an intentional misrepresentation and not on a concealment theory. He asserted, "the evidence was very clear and overwhelming that the affirmative statement made by . . . Greer to . . . Street was that he intended to provide an appropriate

5

legal representation to defend . . . Street in bankruptcy court, and he knowingly . . . failed to do that." The court denied the motion.

During closing argument, the parties primarily focused on the professional negligence cause of action. With respect to the fraud claim, the entirety of Street's argument was as follows: "Did . . . Greer make a misrepresentation to . . . Street about the stipulated facts? You heard . . . Street's testimony. He thinks so. Are you going to believe . . . Greer over . . . Street? You heard all the testimony in the case. You're the jury. You're the finder of the facts. It's up to you."

Greer's closing argument on this claim was slightly longer. He made the following argument: "I have a simple question to ask on [the intentional misrepresentation claim]. When did you ever hear a statement attributed to . . . Greer that was false that he said to . . . Street? [Street] didn't stand up and say, . . . Greer told me that, and it was false. Because what you have to find is, did . . . Greer represent to . . . Street that . . . Greer had not stipulated to any facts before trial?" Greer argued a stipulation requires an agreement between the parties that becomes binding in a lawsuit and there was no evidence Greer agreed to any fact. Rather, counsel noted Street merely presented evidence Greer missed a hearing and "the judge imposed the facts on the parties" and, therefore, Greer's statement he did not stipulate to any facts before trial was true. Counsel concluded, if Greer had made a statement suggesting he did not agree to stipulate to any facts, that would be true.

III. *The Verdict*

Greer drafted a special verdict form for the jury, and Street approved the language. Relevant to this appeal, the first question regarding the fraud cause of action asked the jury if there was evidence of an affirmative misrepresentation. Specifically, the verdict form asked if "Mr. Greer represent[ed] to Mr. Street that Mr. Greer, 'had not stipulated to any facts before trial?'" The jury responded "yes," to this question and the follow up questions addressing the other necessary elements of a fraud claim. The jury determined Greer was liable for fraud and owed Street $2,416,410.30. The jury also

6

answered the professional negligence special verdict questions, concluding Greer was liable for $7,583,589.70.

Greer filed a motion for judgment notwithstanding the verdict, a motion for a new trial, and a motion for a directed verdict. The court denied all three motions.

DISCUSSION

Greer maintains the "jury's verdict" on the intentional misrepresentation claim is "not supported by the evidence." Specifically, he asserts there was no evidence of three necessary elements: false representation, reliance, and damages. In response, Street asserts there was ample evidence of fraudulent misconduct. In making these arguments, both parties acknowledge the jury used a special verdict form, but neither focused their briefing on how the jury's specific factual findings frame our review of the evidence. As we will explain, while there may have been evidence of fraudulent concealment, we read the poorly drafted special verdict as asking the jury about a specific affirmative false statement. We found no evidence to support this factual finding and, therefore, the fraud verdict must be reversed.

In reviewing jury verdicts, generally the standard for review is whether any substantial evidence, contradicted or uncontradicted, supports the verdict or decision. (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1138.) Substantial evidence is evidence which has "ponderable legal significance" and is "reasonable, credible, and of solid value." (*Jorge v. Culinary Institute of America* (2016) 3 Cal.App.5th 382, 396.)

When a special verdict is used, it must "present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the [c]ourt but to draw from them conclusions of law." (Code Civ. Proc., § 624.) "'Unlike a general verdict (which merely *implies* findings on all issues in favor of the plaintiff or defendant), a special verdict presents to the jury each ultimate fact in the case. The jury must resolve all of the ultimate facts presented to it in the special verdict, so that "nothing shall remain to the

7

court but to draw from them conclusions of law." (Code Civ. Proc., § 624.) [¶] The requirement that the jury must resolve every controverted issue is one of the recognized pitfalls of special verdicts. "[T]he possibility of a defective or incomplete special verdict, or possibly no verdict at all, is much greater than with a general verdict that is tested by special findings . . . ." [Citation.]' [Citation.]" (*Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 959-960, original italics.)

Consequently, "When a special verdict is used and there is no general verdict, we will not imply findings in favor of the prevailing party. [Citation.] If a fact necessary to support a cause of action is not included in such a special verdict, judgment on that cause of action cannot stand. [Citation.]" (*Behr v. Redmond* (2011) 193 Cal.App.4th 517, 531 (*Behr*).) We note, "[Street,] as the plaintiff, had responsibility for submitting a verdict form sufficient to support [his] causes of action. [Citation.] If [he] chose not to include a proposed factual finding essential to one of [his] claims, it is not incumbent on [Greer], as the defendant, to make sure the omission is cured." (*Ibid.,* fn. omitted.)

Generally, ""[t]he elements of fraud, which give[] rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."' [Citation.]" (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173; Civ. Code, §§ 1709, 1710.)[3] The first element, misrepresentation, is broadly defined as including "[t]he assertion" of an untrue fact (§ 1710, subd. (2) [false representation]), a suppression of a fact by "one who is bound to disclose it" (§ 1710, subd. (3) [concealment]), or a promise made without any intention to perform (§ 1710, subd. (4)).

However, in this case, the special verdict form was narrowly focused and only asked the jury if there was evidence of a single affirmative false statement. The jury

[3] All further statutory references are to the Civil Code, unless otherwise indicated.

8

was asked the question, "Did Mr. Greer represent to Mr. Street that Mr. Greer, 'had not stipulated to any facts before trial?'" This question limited Street's fraud claim to a very specific affirmative misrepresentation. The jury was not asked if there was evidence of an intentional concealment or failure to perform a promise. (§ 1710, subds. (3) & (4).) This is puzzling, especially because it appears Street relied on a theory of concealment, i.e., "intentionally concealing his failure to act in the manner promised and intentionally concealing his failure to comply with a court order to respond to [the proposed facts] before trial."

As mentioned, a special verdict presents to the jury each ultimate fact in the case. (Code Civ. Proc., § 624.) Thus, to prevail on Greer's sufficiency of the evidence challenge, Street needed to direct us to evidence that *before trial* Greer told Street that he had not stipulated to the facts knowing this statement was false. (*Behr, supra,* 193 Cal.App.4th at p. 531 [when special verdict used we cannot imply findings].) In his briefing, Street fails to cite to any place in the record where Greer declared he filed an opposition to the proposed stipulated facts. Rather, Street's briefing discusses case law holding fraud can be based on concealment when there is a duty to disclose. It contains a lengthy discussion of the evidence supporting the theory there was an intentional concealment. To briefly summarize, Street points to evidence Greer did not keep his promise to contest the proposed stipulation, had a duty to disclose this information to his client, and then took steps to intentionally conceal his negligence. Street's briefing completely ignores the significance of the special verdict form asking the jury to make a specific factual finding about an affirmative misstatement about the status of the proposed stipulated facts.

For example, Street contends Greer represented his intention to contest the facts when he confirmed the receipt of Street's opposition to the draft stipulated facts. At best this evidence shows Greer promised not to stipulate. Nonperformance on a promise will only constitute fraud if it was made with no intent to perform. (§ 1710, subd. (4).) While there was certainly evidence Greer was professionally negligent in handling the

9

case, there was nothing to suggest Greer sent the e-mail as a deliberate lie or false promise. Thus, while Greer's promise may have been misleading, the evidence does not support the jury's finding of an intentional misrepresentation. And as mentioned, the special verdict form did not ask the jury to decide if there was a failure to perform a promise. (§ 1710, subd. (4).)

Street also argues Greer misrepresented the defense strategy, including misrepresenting his stipulation to the facts, through more implicit statements. For example, Greer repeatedly told Street "that the defenses to his case were strong, they just needed to be presented in a comprehensive and coherent fashion." Street argues these assertions communicated Greer's intentions to contest the facts. Again, statements promising or indicating a particular action are not evidence of an intentional misrepresentation. To the extent this evidence suggests Greer concealed his stipulation to the facts when he had a duty to disclose this information, the jury was not asked to determine if there was an intentional concealment.

In assessing special verdicts, we must look to exactly what the jury was asked: "If a fact necessary to support a cause of action is not included in such a special verdict, judgment on that cause of action cannot stand. [Citation.]" (*Behr, supra,* 193 Cal.App.4th at p. 531.) Here, because the special verdict did not require findings about failure to perform a promise or fraudulent concealment, finding fraud in this case "is like a puzzle with pieces missing; the picture is not complete." (*Falls v. Superior Court* (1987) 194 Cal.App.3d 851, 855, fn. omitted.) We cannot uphold the jury's verdict because the record does not contain any evidence Greer affirmatively represented he "had not stipulated to any facts before trial."

We note the record shows both parties had ample opportunity at trial to offer input on the special verdict form, and it was each party's responsibility to highlight deficiencies in the verdict form. (*Behr, supra,* 193 Cal.App.4th at p. 531.) Street declined to do so, instead accepting Greer's special verdict form with no objections.

10

In conclusion, while we agree evidence exists which may support a finding of intentional concealment, the jury was never presented with an opportunity to make a factual decision on the matter. We cannot uphold a verdict for which there is an essential element missing.[4]

## DISPOSITION

The judgment is reversed as to the second cause of action for fraud by misrepresentation. The award of damages is reduced by $2,416,410.30. In all other respects, the judgment is affirmed. In the interests of justice, each party shall bear their own costs on appeal.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


THOMPSON, J.

---

[4] Both Greer and Street discuss the other elements of fraud, including justifiable reliance and damages. "All of these elements must be present if actionable fraud is found; one element absent is fatal to recovery." (*Ach v. Finkelstein* (1968) 264 Cal.App.2d 667, 674.) Based on our ruling the first element is missing, there is no need to address the other factors.